874 So.2d 1 (2004)
HUNTINGTON ON THE GREEN CONDOMINIUM, etc., Appellant/Cross-Appellee,
v.
LEMON TREE I-CONDOMINIUM, etc., Appellee/Cross-Appellant.
No. 5D02-899.
District Court of Appeal of Florida, Fifth District.
January 9, 2004.
Rehearing Denied June 1, 2004.
*2 Robyn M. Severs and Robert L. Taylor of Taylor and Carls, P.A., Maitland, for Appellant/Cross-Appellee.
John A. Leklem of John A. Leklem, P.A., Orlando, for Appellee/Cross-Appellant.
THOMPSON, J.
Huntington on the Green Homeowner's Association ("Huntington") appeals a final judgment in favor of Lemon Tree Condominium I Association ("Lemon Tree"). We reverse and remand for entry of judgment in favor of Huntington.[1]
The Huntington property and the Lemon Tree property both abut a development known as Alhambra. When Alhambra's developer decided to build additional residential units on its property, Huntington and Lemon Tree, along with area civic associations, joined forces to stop the addition to the development. The groups Huntington, Lemon Tree, and the civic associations, were not successful in stopping the addition, but they did extract concessions from Alhambra's developer. During settlement negotiations, the developer agreed, among other things, to give the county a green space and to build a buffer wall between its property and the Huntington propertyobtaining a buffer wall had been Huntington's main concern. There were other requirements for the developer involving streetscapes and traffic, and the county had various obligations to the developer.
During the mediation, the county refused to accept the open space. This refusal left the groups unexpectedly considering money as part of the settlement. According to one witness, "no one was prepared to have this money coming at us." The groups and the developer drafted a non-binding settlement outline providing that the developer would pay the groups a lump sum of $155,000. In addition, the developer agreed to build a "6' non-wood, solid wall with stucco veneer" along Huntington's boundary. The developer also agreed to pay Lemon Tree $37,700, which was the developer's estimate of what it would cost Lemon Tree to build a buffer wall. The $37,700 was to be put in escrow and used by Lemon Tree to build a wall on its border with the developer's property. Two years after a time certain, any portion of the $37,700 not used was to be returned *3 to the developer. Lemon Tree would not accept the escrow requirement and the two-year time limit, so those provisions were deleted from the nonbinding settlement outline. In addition, the $37,700 originally slated for escrow was added to the $155,000 lump sum settlement amount, for a total lump sum amount of $192,700. Among other things, the final agreement required the developer to pay the groups a lump sum of $192,700 and to build a wall for Huntington.
This appeal involves the distribution of the $192,700 paid to the groups by the developer. In anticipation of receiving the settlement funds, the groups executed a separate, handwritten agreement to "consummate the settlement agreement" reached with the developer and to distribute the settlement fund. Before it was amended, the distribution agreement stated that the lump sum payment was to be $155,000. From that sum, the groups' attorney was to be paid $65,000, and the mediator's fee (about $1,200) was to be paid. Next, two umbrella civic organizations were to receive $7,000 each so that they could repay those who had donated to the cause, and to give the organizations a little extra. The remainder of the $155,000, which was $75,000, was to be divided equally between Huntington and Lemon Tree, except that Huntington's half share of the $75,000 was to be adjusted downward if Lemon Tree incurred additional costs to build its wall.
An addendum to the distribution agreement took into account the change to the settlement reached with the developer. The ultimate settlement with the developer was for the developer to make a lump sum payment of $192,700 instead of paying a lump sum of $155,000 and putting $37,700 in escrow for Lemon Tree. The addendum stated that the total settlement amount was $192,700, rather than $155,000, and that the additional $37,700 would be deducted from the $192,700 and paid to Lemon Tree. After deducting for the $37,700 and the amounts for the attorney, the mediator, and the two umbrella groups, the balance of the $192,700 would have been approximately $75,000 to be shared equally by Huntington and Lemon Tree, unless it cost Lemon Tree more than $37,700 to build its wall.
The groups had opened a bank account, in the name of Citizens for Compliance, for accepting donations to the cause. Pursuant to the settlement agreement, the developer remitted the settlement money to Citizens for Compliance. The two people in charge of the account disbursed Lemon Tree the $37,700, plus all but a few hundred dollars of the $75,000, apparently based on a bid Lemon Tree obtained and submitted to the persons in charge of the account. One of the two people in charge of the account testified at trial and testified that she remembered that Lemon Tree was supposed to have obtained contractors' bids for building the wall. The records of Citizens for Compliance contained three bids for the wall, in the amounts of $112,000, $111,000, and $103,000, and its three-page document entitled "Settlement Payment" showed that the disbursement to Lemon Tree was based on the highest of the three bids. The person in charge of the account did not know why the records contained three bids for Lemon Tree's wall or who decided how much Lemon Tree would be disbursed. The estimates all showed that Lemon Tree's border was 1,500 feet long, but the trial court found that it was 1,100 feet long. The representatives of Lemon Tree who testified did not know who decided that the border was 1,500 feet long.
A year after the money was disbursed to Lemon Tree, Huntington wrote Lemon Tree stating that it had been made clear *4 during the mediation and the discussions among the groups that Lemon Tree intended to move with dispatch to have the wall built. Huntington pointed out that Lemon Tree had not shown any sign that it intended to build a wall, and said that if Lemon Tree's plans had changed, Huntington would like its share of the $75,000 balance of the settlement funds. This and another overture Huntington made to Lemon Tree were unavailing, so Huntington sued for a declaration of its rights to half the balance of $75,000.
Huntington's position was that Lemon Tree was entitled to the first $37,700 of the settlement funds, and that only if Lemon Tree needed more than that for the wall, was it entitled to take the excess from Huntington's share. Huntington argued that since Lemon Tree never attempted to build a wall, Lemon Tree did not need any additional funds to complete a wall, so it was not entitled to any more than $37,700, plus half the $75,000. On the other hand, Lemon Tree contended that the distribution agreement did not require it to build a wall, and that it should be allowed to invade Huntington's half share for the greater costs it would have incurred if it had attempted to build a wall. Lemon Tree also argued that it should be allowed to invade the $75,000 for the entire cost of its wall. Huntington agreed that Lemon Tree was not required to build a wall, but contended that Lemon Tree could invade Huntington's share of the $75,000 only if Lemon Tree actually built a wall and actually incurred actual costs in excess of the first $37,700.
In the main, the trial court agreed with Lemon Tree. It decided that Lemon Tree could invade Huntington's half share even though it did not build a wall. The court decided that the value of a wall for Lemon Tree should be the average of the three bids found in the records, but reduced in light of the court's finding that the border was only 1,100 feet long. The court also decided that under the distribution agreement, Lemon Tree was entitled to the $37,700 free and clear, so to speak, and that it was also entitled to so much of the $75,000 as it would have taken for Lemon Tree to build a wall 1,100 feet long. The court found that it would have cost Lemon Tree $81,209.87 to build a wall. Since $81,209.87 is greater than $75,000, Huntington took nothing.
We agree with Huntington that the court misinterpreted the distribution agreement. The intent of the parties to the contract should govern the construction of a contract, and to determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract. American Home Assur. Co. v. Larkin General Hosp., Ltd., 593 So.2d 195 (Fla.1992). In addition, where two contracts are part and parcel of the same general transaction, they may under some circumstances be interpreted together. J.M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So.2d 484, 486 (Fla.1957). Here, where the settlement agreement with the developer and the distribution agreement among the groups were part and parcel of the same agreement, and where the distribution agreement was entered to "consummate" the settlement agreement, we consult the settlement agreement for enlightenment on the distribution agreement.
The following rules of construction also assist a court in determining the intent of the parties:
(1) the contract should be considered as a whole in determining the intention of the parties to the instrument; (2) the conditions and circumstances surrounding the parties to the instrument and the object or objects to be obtained when *5 the contract was executed should be considered; (3) courts should place themselves, as near as possible, in the exact situation of the parties to the instrument, when executed, so as to determine the intention of the parties, objects to be accomplished, obligations created, time of performance, duration, mutuality, and other essential features; (4) if clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible; if one interpretation would lead to an absurd conclusion, then such interpretation should be abandoned and the one adopted which would accord with reason and probability; (5) if the language of a contract is contradictory, obscure or ambiguous or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary, and such as a prudent man would naturally execute, while the other interpretation would make it inequitable, unnatural, or such as a reasonable man would not be likely to enter into, then the courts will approve the reasonable, logical and rationable [sic] interpretation.
Triple E Development Co. v. Floridagold Citrus Corp., 51 So.2d 435, 438-39 (Fla. 1951).
First, the court erred in ignoring the $37,700 when computing the amount by which Lemon Tree could invade Huntington's half share of the $75,000. The agreement with the developer originally provided that $37,700 would go into escrow for Lemon Tree's use in building a wall. The escrow requirement was deleted and the $37,700 was added to the settlement amount of $155,000, for a total of $192,700. Similarly, the distribution agreement among the groups provided that what was the escrow money of $37,700 would be added to the $155,000, subtracted from the resulting $192,700, and given to Lemon Tree. The balance remaining after deducting the $37,700 and the amounts for the attorney, the mediator, and the umbrella groups would be shared equally by Huntington and Lemon Tree unless there were "additional costs" to Lemon Tree to build a wall. The "additional costs" were any costs over and above the $37,700. The goal was parity between Huntington and Lemon Tree, and since Huntington was getting a wall, Lemon Tree deserved a wall. In computing how much of the $75,000 to which Lemon Tree was entitled, the court should not have ignored the $37,700, because the $37,700 was set aside for Lemon Tree's use in building a wall. Furthermore, the goal of parity would not be achieved by giving Lemon Tree $37,700 and a wall.
The court further erred in allowing Lemon Tree more than half the $75,000. The focus of the distribution agreement is not on monetary damages, but on a wall for Huntington and a wall for Lemon Tree. It is evident that the "object to be accomplished" was to place Lemon Tree on an equal footing with Huntington; Huntington's wall would remove the indignity of the new development from its vista, and Lemon Tree deserved as much. That the focus was on an actual wall for Lemon Tree is evinced by the provision that Lemon Tree could invade Huntington's half share of the $75,000 if its wall cost more than $37,700. To put it another way, under the distribution agreement, the amount to be shared by Lemon Tree and Huntington could not be computed until Lemon Tree met its first objectiveobtaining a wall. The agreement does not state what should happen if Lemon Tree did not build a wall, but Lemon Tree cannot have it both ways. It cannot, on the one hand, be entitled to an actual wall even if it means invading Huntington's share of *6 the $75,000, and, on the other hand, be entitled to invade Huntington's share based on the cost of a hypothetical wall.
The intent of the parties was to obtain an actual wall for Lemon Tree and to distribute the $75,000 depending on the extent to which, if at all, the actual cost of the wall exceeded $37,700. Under the distribution agreement, half of the $75,000 was to be distributed to Huntington "with the condition that the amount payable to Huntington on the Green is to be adjusted for any additional costs to Lemon Tree I of a wall on the Alhambra Lemon Tree I property line." Because Lemon Tree elected not to build a wall, it did not incur "any additional costs" to build a wall, and, that being so, it was not entitled to more than half the $75,000. We therefore reverse the final judgment and remand with instructions to enter judgment for Huntington for one half the approximately $75,000, or to be precise, $74,812.92. If, as it appears, Huntington was disbursed a few hundred dollars, that amount will be deducted.
REVERSED and REMANDED, with instructions.
SAWAYA, C.J., and PLEUS, J., concur.
NOTES
[1] The issues on cross appeal are without merit.