JUDE G. GRAVOIS, Judge.
| ¡¡Plaintiffs filed this lawsuit in 2000 against the Parish of Jefferson (“the Parish”) and B & K Construction Company, Inc. (“B & K”), alleging that their homes sustained damages in 1998 and 1999 as a result of construction activities that had been conducted on the Gardere Canal on the West Bank of Jefferson Parish.[1] Pertinent to this appeal, in January of 2010, the Parish filed a motion for summary judgment, claiming immunity from suit pursuant to La. R.S. 9:2798.1, which confers immunity on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers or duties. B & K also filed a motion for summary judgment, claiming immunity pursuant to La. R.S. 9:2771 (statutory contractor immunity) and to jurisprudentially created contractor immunity (government contractor immunity). In separate judgments, the trial court granted both motions for summary judgment, dismissing both defendants from this proceeding. Plaintiffs |4filed separate appeals of these summary judgments. This Court consolidated the appeals.[2]
Plaintiffs also filed a motion for leave to file their fifth amending and supplemental petition. The Parish responded by filing a motion to strike this pleading. In a judgment dated November 7, 2011, the trial court denied plaintiffs’ motion for leave and granted the Parish’s motion to strike. Plaintiffs also appeal this judgment.
For the reasons that follow, we affirm the trial court’s grant of summary judgment in favor of the Parish, affirm the trial court’s denial of plaintiffs’ motion for leave to file their fifth amending and supplemental petition and its granting of the Parish’s motion to strike this pleading, reverse the trial court’s grant of summary judgment in favor of B & K, and remand the matter to the trial court for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On January 16,1997, the Parish and the United States Army Corps of Engineers (“the Corps”) entered into a Project Cooperation Agreement (“the Agreement”) concerning construction of a portion of the Southeast Louisiana Flood Control Project (“the SELA Project”) in Jefferson Parish on the Gardere Canal (hereafter “the Gardere Canal Project” or “the Project”).[3] *1212 Pursuant to the Agreement, the United States provided 75% of the Gardere Canal Project’s costs, with the Parish providing the remaining 25% of the Project’s costs. The final plans and specifications for the Gardere Canal Project were prepared, reviewed and accepted in accordance with the standards of the Corps. Once the plans and ^specifications for the Project were finalized, B & K entered into a contract with the Corps as general contractor for construction of the drainage improvements on the Gardere Canal.
Plaintiffs filed this lawsuit on February 28, 2000 against the Parish and B & K, alleging that the Parish and B & K were liable for damages which occurred to their homes which are located in Harvey, Louisiana near the Gardere Canal. Plaintiffs allege that during 1998 and 1999, the Parish and B & K undertook construction work on the Gardere Canal in close proximity to their homes, and that substantial damage was done to their homes, including a pulling away of walls from the concrete slabs upon which their homes were built, numerous cracks in their homes, and damages to their garages and swimming pools. Plaintiffs specifically alleged that the Parish and B & K were grossly negligent in the following ways:
a. Causing vibrations, soil subsidence, improper weight bearing and placement of heavy equipment and removal of sheet pilings;
b. Failing to take proper and necessary safe guards to insure that plaintiffs houses would not be damaged by the construction work undertaken in the Gardere Canal;
c. Failing to properly inspect and test whether plaintiffs’ houses could withstand the construction work being undertaken by the defendants without serious and irreparable damages; and
d. In other respects that will be shown at the trial on this matter.

APPEAL NO. 12-CA-215

Summary Judgment in favor of the Parish

On January 28, 2010, the Parish filed the motion for summary judgment that is the subject of the instant appeal.[4] In its motion, the Parish claimed the affirmative defense of discretionary immunity pursuant to La. R.S. 9:2798.1(B). | ^Plaintiffs filed several oppositional memoranda and the Parish filed several reply memoranda. The matter was submitted to the trial court on briefs. On November 7, 2011, the trial court rendered judgment, granting summary judgment in favor of the Parish. In its reasons for judgment, the trial court first found that the Parish was a public entity as contemplated by the statute. The court then found that plaintiffs had failed to introduce or submit any evidence that their damages had been caused by any operational negligence on the part of the Parish.
On appeal, plaintiffs argue that the summary judgment in favor of the Parish should be reversed because the Parish failed to prove entitlement of the discretionary immunity defense provided by La. R.S. 9:2798.1.
The Parish responds that the trial court’s decision is correct because the Par *1213 ish’s decision to enter into the Agreement with the Corps was clearly discretionary or grounded in policy, thus entitling it to assert the discretionary immunity defense. It argues that under the Agreement, the Parish had no responsibility for any construction or operations that were causally related to plaintiffs’ alleged damages, and that it committed no operational negligence. The Parish argues that its responsibility under the Agreement to monitor vibrations during construction was fully performed when it paid a testing contractor to perform that service and when it furnished its vibration monitoring reports to the Corps and to B & K. The Parish argues that its duty to monitor the vibrations and to report such to the Corps/B & K, and to investigate damage claims, did not create any duty in favor of plaintiffs to confer liability on the Parish for plaintiffs’ damages.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Gray v. Am. Nat’l Prop. & Cas. Co., 07-1670, p. 6 (La.2/26/08), 977 So.2d 839, 844. An appellate court must ask the same questions as does the trial Ivcourt in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action (subject to certain exceptions not pertinent herein). La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. Id.
Under La. C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The Parish’s claim of discretionary immunity is based upon La. R.S. 9:2798.1, which states, in pertinent part:
A. As used in this Section, “public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, *1214 intentional, willful, outrageous, reckless, or flagrant misconduct.
IsRecently, the Fourth Circuit explained the application of the statutory doctrine of discretionary immunity under La. R.S. 9:2798.1, to-wit:
The Louisiana Supreme Court established a two-step test for courts to follow when determining whether the immunity applies. See Simeon v. Doe, 618 So.2d 848, 852-53 (La.1993). A court must first determine whether a statute, regulation, or policy requires the governmental agency to follow a particular course of action. If there is such a requirement, then there is no choice or discretion, and the immunity does not apply. If, however, the governmental entity has a choice about whether to undertake the activity, then the entity will be protected by the immunity only if the choice is grounded in “social, economic, or political policy.” Id. The application of this affirmative defense is “a question of fact to be determined through a trial.” Lambert v. Riverboat Gaming Enforcement Div., 96-1856 (La.App. 1 Cir. 12/29/97), 706 So.2d 172, 178. Once a defendant establishes its conduct involves a matter of choice or discretion that is not the end of the inquiry. A court must also consider whether the conduct in question occurred at the “operational level”, or how the entity carried out its policy or decision. The immunity statute does not protect governmental entities against legal fault or negligent conduct at the “operational level”, but only confers immunity for policy decisions, that is decisions based on social, economic, or political concerns. Chaney v. National Railroad Passenger Corp., 583 So.2d 926, 929 (La.App. 1 Cir.1991). As such, once a discretionary decision is made, the government entity is not protected from liability for conduct in carrying out the discretionary decision. Socorro v. Orleans Levee Bd., 561 So.2d 739, 756 (La.App. 4 Cir.1990).
Johnson v. Orleans Parish Sch. Bd.[5]
Plaintiffs argue that whereas the decision of the Parish to participate in the Project might have been discretionary, its obligations under the Agreement, once entered, were not discretionary, and thus, it is not entitled to the discretionary immunity defense to escape liability for its alleged negligence. Plaintiffs argue that under the Agreement, the Parish had affirmative duties to the homeowners along the canal, the breaches of which constituted “operational negligence,” including: (1) the duty to monitor excessive vibrations from pile-driving on the site; (2) the duty to receive reports on excessive vibrations; (3) the duty to notify the contractor if the Parish became aware of excessive vibrations; (4) the duty to | ¡Investigate claims of damages by property owners due to the construction; (5) the duty to forward complaints of such property damages to the Corps; and (6) the duty to pay twenty-five per cent of any damages caused by work on the Project. Plaintiffs argue that their homes were damaged during the Project by excessive vibrations from the driving of steel sheet pilings to construct a temporary retaining wall, the dredging of the canal, the erection of a permanent concrete retaining wall, and the removal of the temporary *1215 retaining wall. Plaintiffs allege that the Parish breached its duties under the Agreement by failing to prevent the excessive vibrations, or to remedy or eliminate the excessive vibrations. Plaintiffs argue that the Parish did nothing to prevent or mitigate the damages to their homes, contrary to the Parish’s duties under the Agreement.
In its motion for summary judgment, the Parish pointed out that the United States District Court for the Eastern District of Louisiana dismissed the Corps on the basis of discretionary immunity, accepting the Corps’ argument that its work on the Gardere Canal Project was discretionary and involved policy considerations.[6] The Parish asserted in its motion that its involvement in the Gardere Canal Project likewise involved policy choices that entitled it to discretionary immunity. The Parish argued in its motion that its only involvement in the project was the contribution of certain costs (25% of the cost, with 5% in funds and the remaining 20% in in-kind contributions such as land and materials) and providing initial engineering designs (as part of its in-kind contributions under the Agreement). The Parish asserted that its decision to enter into the Agreement with the Corps and to contribute to its costs through cash, services, and other contributions fell within its discretion and was grounded in public policy.
1 inThe Parish also pointed out that under the Agreement, it had no responsibility for the constructions on the Gardere Canal, other than its approval and limited funding, asserting that co-defendant B & K had the responsibility for performing all of the constructions on the Gardere Canal. The Parish denied that the Agreement conferred upon it any operational responsibility to prevent or mitigate damages to plaintiffs’ homes. It argued that likewise, the existence of a cost-sharing provision between it and the Corps regarding payment for any damages did not confer a duty upon the Parish to these plaintiffs.
The trial court issued reasons for judgment, finding that the Parish was a public entity as contemplated by La. R.S. 9:2798.1, and that the Parish’s decision to enter into the Agreement was a discretionary decision based upon policy considerations. The court also found that the Parish did not commit any operational negligence, as it neither assumed responsibility nor played any role in the construction of the Gardere Canal Project. Its role was limited to approval and funding of the construction. Under the Agreement, the Corps assumed the responsibility for the management and supervision of all work performed on the Project. The court further found that there was no factual or legal basis to support plaintiffs’ contention that the Parish had agreed to assume any duty to compensate plaintiffs for their alleged damages. Accordingly, the court found that the Parish had borne its burden of proof that it was entitled to discretionary immunity provided to public entities by La. R.S. 9:2798.1, and granted the Parish’s motion for summary judgment.
Upon our de novo review, we find no error in the trial court’s findings or conclusions in its grant of summary judgment in favor of the Parish. Plaintiffs *1216 allege that the damages to their homes were caused by excessive vibrations resulting from construction activities on the Gardere Canal. The facts are undisputed that the construction activities were actually carried out by B & K and Inits subcontractors, and not by the Parish. The Parish was not responsible under the Agreement for construction or “operational” activities that caused the vibrations, nor has it been shown that the Parish performed such activities. The Parish’s activities were limited to monitoring the vibrations, through a contract with a testing contractor, and reporting the results of the monitoring to B <& K and the Corps. Plaintiffs have alleged that the Parish’s monitoring duties created a duty on the part of the Parish to protect plaintiffs’ property once the excessive vibrations were discovered, but offered no factual support for this conclusion. The Parish’s monitoring duties or the alleged breach thereof did not cause plaintiffs damages, nor did those duties under the Agreement create a duty in favor of plaintiffs.
Plaintiffs’ reliance on Mitter v. St. John the Baptist Parish, 05-375 (La.App. 5 Cir. 12/27/05), 920 So.2d 263, is misplaced. In that case, the court rejected a discretionary immunity defense asserted by St. John the Baptist Parish because it was shown that not only did the Parish make the discretionary decision to provide drainage, the Parish was also responsible for, and had actually performed, the construction work that gave rise to the plaintiffs’ damages. In this case, B & K performed the work (the construction activities) under contract with the Corps; the Parish did not.
Plaintiffs also argue that under the Agreement, upon completion, the Project was to be turned over to the Parish, which would be responsible for operation and maintenance of the canal. Plaintiffs do not allege, however, that the damage to their homes was caused after the Project was turned over to the Parish for operation and maintenance, but rather during the construction phase of the Project prior to that time.
For the foregoing reasons, finding that no genuine issues of material fact exist as to the claims plaintiffs have asserted against the Parish, and that the Parish 11¾⅛ entitled to judgment on its discretionary immunity defense as a matter of law, we affirm the trial court’s grant of summary judgment in favor of the Parish.

Denial of Motion for Leave to file fifth amending and supplemental petition and grant of Motion to Strike

Plaintiffs also argue on appeal that the trial court erred in denying their motion for leave to file their fifth amending and supplemental petition and in granting the Parish’s motion to strike this pleading. Plaintiffs argue that this ruling was an abuse of discretion because they acted in good faith in filing this motion, and because no trial date is set, no prejudice would be caused to defendants. Plaintiffs further argue that in denying their motion for leave to amend, the trial court improperly addressed the merits of plaintiffs’ amended petition, whether the petition stated a cause of action as third-party beneficiaries under an alleged agreement between the Parish and the Corps.
La. C.C.P. art. 1151 provides that after an answer has been filed, the petition and answer may be amended only by leave of court or by written consent of the adverse party. The decision to disallow an amendment under La. C.C.P. art. 1151 is within the sound discretion of the trial judge and that decision should not be disturbed on appeal unless there has been an abuse of the broad discretion vested in the trial court. Salt Domes, Inc. v. Villere Food Group, Inc., 03-0185 (La.App. 4 Cir. *1217 9/24/03), 857 So.2d 1110, 1114. Further, La. C.C.P. art. 964 provides that “[t]he court on motion of a party or on its own motion may at any time and after a hearing order stricken from any pleading any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter.”
In their memorandum attached to their motion for leave to amend, filed on June 21, 2011, plaintiffs contended they “recently” discovered that the Parish had “suppressed” a “hidden contract” between it and the Corps, a document entitled “Standard Operating Procedure” (“the SOP document”), which plaintiffs had obtained from the Corps in a Freedom of Information Act request. Plaintiffs 11Hclaimed that they were third-party beneficiaries under this document because it clearly showed that the Corps and the Parish anticipated that damages would occur to plaintiffs’ property, that they had agreed to pay the damages in a 75/25 per cent split, and that the Parish had the duty thereunder to submit the claims of any property/homeowners within thirty (30) days of notice. Plaintiffs argued that the Parish had breached its duties under the SOP document, committed fraud against plaintiffs, and breached its fiduciary duty to plaintiffs.
The Parish filed a motion to strike, arguing that plaintiffs’ claim that their fifth petition was based upon “recently” discovered information was false. The Parish pointed out that plaintiffs received the SOP document on November 24, 2010, and subsequently attached it to their supplemental opposition brief to the Parish’s motion for summary judgment filed on January 31, 2011 (the Parish’s motion for summary judgment that is the subject of this appeal). The Parish argued that this “information” was specifically brought to the trial court’s attention, which addressed it in a judgment dated April 12, 2011. In that judgment, which granted plaintiffs’ motion to continue the hearing on the Parish’s motion for summary judgment in order for plaintiffs to take depositions of certain former Parish officials, the court limited the focus of the depositions to the merits of the case and the issue of discretionary immunity raised by the Parish’s motion for summary judgment, specifically stating that “any alleged agreement between [the Parish] and [the Corps] regarding the payment of any alleged damages is not relevant to the above-referenced matter.” The Parish further argued that plaintiffs had misrepresented the contents of the document, stating that it was not a contract between the Parish and the Corps, but rather was a policy statement by the Corps regarding the proper credit to be provided to the Parish for the cure of any particular damages caused during the Project.
| uIn denying the motion for leave to amend, the trial court squarely addressed, and disagreed with, plaintiffs’ contentions made in support of their motion for leave to amend that the “newly” discovered SOP document was a contract between the Corps and the Parish made for the third-party benefit of plaintiffs. In its reasons for judgment, the trial court found that “the document in question is a policy or guideline set forth by the Corps providing the method for the Parish to apply for credit in connection with monies paid for damages resulting from construction.” Given that plaintiffs squarely placed the substance of the SOP document before the court in the motion for leave to amend, we find no abuse of the trial court’s discretion in addressing the merits of plaintiffs’ characterization of this document when making its ruling to deny plaintiffs’ motion for leave. Neither do we, upon review, find any abuse of discretion *1218 in the ruling itself that this document did not create a duty upon the Parish towards plaintiffs, nor was it a contract of which plaintiffs were third-party beneficiaries.
For the foregoing reasons, we find that the trial court did not abuse its broad discretion in denying plaintiffs’ motion for leave to file their fifth amending and supplemental petition and in granting the Parish’s motion to strike this pleading.

APPEAL NO. 12-CA488

Summary Judgment in favor of B & K

On February 9, 2012, the trial court granted B & K’s motion for summary judgment. In its motion, B & K argued that it was immune from suit under the contractor immunity provisions of La. R.S. 9:2771 (statutory contractor immunity), and also under its claim of immunity as a government contractor pursuant to Boyle v. United Techs. Corp., 487 U.S. 500, 507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (government contractor immunity). In this appeal, plaintiffs argue that the trial court erred in granting B & K’s motion for summary judgment.
| ^Statutory contractor immunity
Plaintiffs first argue that summary judgment was inappropriate herein because B & K failed to prove its affirmative defense of statutory contractor immunity under La. R.S. 9:2771, in particular because: (1) plaintiffs’ damages were caused by B & K’s fault or negligence; (2) B & K’s work was not performed according to the plans or specifications provided to B & K; and (8) the damages were caused by B & K’s failure to follow the plans and specifications, rather than any fault or insufficiency of the plans and specifications.
The contractor immunity statute, La. R.S. 9:2771, provides:
No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
A contractor’s immunity to third parties for defects in the work constructed, under the article governing non-liability of a contractor for destruction or deterioration of work, results from proof of compliance to plans and specifications alone. Cormier v. Honiron Corp., 00-446 (La.App. 3 Cir. 9/27/00), 771 So.2d 193. In general, a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations; however, a contractor is not the guarantor of the sufficiency of plans and specifications drawn by another, and if it complies with those plans and specifications, it is entitled to statutory immunity. Morgan v. Lafourche Recreation Dist. No. 5, 01-1191 (La.App. 1 Cir. 6/21/02), 822 So.2d 716, writ denied, 2002-1980 (La.10/25/02), 827 So.2d 1156. Under the contractor immunity statute, a contractor cannot rely blindly on plans and specifications, but |lfirather, to avoid liability, the contractor must prove either that the condition created was not hazardous or that it had no justifiable reason to believe that its adherence to the plans and specifications created a hazardous condition. Id.
*1219 In support of its motion for summary judgment, B & K filed an affidavit of Stephen B. Hinkamp, the resident engineer for the Corps’ SELA Resident Office, who periodically reviewed the Project for the Corps. Mr. Hinkamp attested, that “[t]o the best of my knowledge, at this time, I am not aware of any incident where it has been shown that property in the vicinity of the subject project has been damaged due to the failure of [B & K] to comply with project plans and specifications.”
B & K also filed an affidavit of W. Blake Andrews, vice president of B & K, who attested that “[B & K] performed all work on this project in accordance with the plans and specifications provided by the Government,” and that “[B & K] was not aware, at any time, of any reasons that would have made the implementation of the plans and specification for this project unsafe or unreasonable.”
Plaintiffs filed an opposition to B & K’s motion for summary judgment. Among the exhibits plaintiffs attached to their opposition memorandum were the Parish’s supplemental responses to plaintiffs’ interrogatories and requests for production of documents, which included the following documents: 1) a purported copy of a letter from Mr. Hinkamp of the Corps to B & K dated March 16, 1999, wherein he memorialized his telephone conversations of February 25,1999 and March 1,1999 with B & K in which he had advised B & K that several of the vibration reports on the subject Project in February of 1999 showed vibrations in excess of that allowed under the contract, reminded B & K of their contractual responsibility to take immediate actions to reduce vibrations, and told B & K that it would be held responsible for any damage which resulted from its failure to comply with these contractual requirements (plaintiffs’ Exhibit “A”); and 2) |17numerous vibration monitoring reports that were collected under the requirements of the B & K’s construction contract with the Corps, which showed over forty instances of vibrations that exceeded the contract specification level of 0.25 inch per second (plaintiffs’ Exhibit “B”). Plaintiffs also attached as an exhibit to their opposition a copy of an extracted portion of B & K’s construction contract with the Corps containing the contract specifications relative to vibrations (Section 7.3), which included the provision that “[vjibrations shall be monitored by others and limited to 0.25 inch per second at all structures including buildings and pools. Exceeding 0.5 of an inch may induce structural damages. The Contractor shall be informed when the vibrations from his operations have exceeded the above limit and the Contractor shall take immediate action to reduce the vibrations to the acceptable limits.” (plaintiffs’ Exhibit “C”).
B & K also filed a supplemental memorandum in support of its motion for summary judgment, attaching thereto the entire depositions of Mr. Andrews, and of Virgil M. Stuart, Jr., who testified as a representative of the Parish, both taken in conjunction with this litigation.
In brief, B & K first argues that the documentary exhibits attached to plaintiffs’ opposition to the motion for summary judgment cannot properly be considered by this Court because such exhibits were not verified or introduced into evidence.
When ruling on a motion for summary judgment, the trial court may consider “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any[,]” presented by the parties in support of or in opposition to the motion; those specifically enumerated documents need not be formally introduced into evidence at the hearing on the motion if they are already “on file” or physically placed into the record prior to *1220 the hearing on the motion. La. C.C.P. art. 966(B); Sheffie v. Wal-Mart Louisiana LLC, 11-1038 (La.App. 5 Cir. 5/31/12), 92 So.3d 625, 629. The court may also consider other documents or things which do not fall within the specifically enumerated categories of documents listed in La. C.C.P. art. 966(B). However, unsworn or unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and will not be considered; attaching such documents to a motion for summary judgment does not transform such documents into competent summary judgment evidence. Id.
Under the particular facts and circumstances of this case, we find that the exhibits objected to by B & K are properly before us in our de novo review of the summary judgment rendered herein in favor of B & K. First, we note that Mr. Hinkamp’s letter dated March 16, 1999 (plaintiffs’ Exhibit “A”) and the vibration monitoring reports (plaintiffs’ Exhibit “B”) were produced to plaintiffs by the Parish in response to interrogatories and requests for production of documents filed by plaintiffs in this litigation. Further, these documents, along with the extract from B & K’s construction contract with the Corps (plaintiffs’ Exhibit “C”) were significantly mentioned and discussed by Mr. Andrews during the course of his lengthy sworn deposition which was submitted by B & K. As such, these documents submitted by plaintiffs, along with the affidavits and depositions submitted by B & K, are properly before us in our review of the summary judgment in favor of B & K on appeal.
Upon our de novo review of the entire record before us, we first find that the affidavits of Mr. Hinkamp and Mr. Andrews submitted by B & K do not properly and adequately support its motion for summary judgment, such affidavits being conclusory in nature and falling short of bearing B & K’s burden of showing entitlement to summary judgment. Plaintiffs’ petition against B & K charges that their homes were damaged during the Project by excessive vibrations from the driving of steel sheet piling to construct a temporary retaining wall, the dredging of |19the canal, the erection of a permanent concrete retaining wall, and the removal of the temporary retaining wall. Mr. Hinkamp of the Corps merely attested, that “[t]o the best of my knowledge, at this time, I am not aware of any incident where it has been shown that property in the vicinity of the subject project has been damaged due to the failure of [B & K] to comply with project plans and specifications.” (Emphasis added.) We find that this attestation, by a Corps official who was not present on a day-to-day basis and whose duties consisted of periodically reviewing the Project, is conclusory in nature and not sufficient to bear B & K’s burden of proof on summary judgment that there is no genuine issue of material fact regarding whether B & K performed the contract within the plans and specifications.
Likewise, the affidavit of Mr. Andrews is also not sufficient to bear B & K’s burden of proof. Mr. Andrews first attestation, that B & K “performed all work on this project in accordance with the plans and specifications provided by the Government,” is also conclusory in nature and is in the nature of an opinion without any supporting facts. His second attestation, that B & K “was not aware, at any time, of any reasons that would have made the implementation of the plans and specification for this project unsafe or unreasonable,” does not bear on the specific issue presented by plaintiffs. Plaintiffs do not assert that the plans and specifications themselves, if correctly followed by B & K, created a hazardous situation that B & K should have realized; rather, plaintiffs’ *1221 case is premised on the assertion that their damages were caused by B & K’s failure to perform in accordance with the plans and specifications of the Project.
B & K’s eonelusory affidavits fail to show that no genuine issues of material fact remain and that it is entitled to judgment as a matter of law.
Further, based on our review of the entirety of Mr. Andrews’ deposition submitted by B & K, we find that genuine issues of material fact remain as to [ gpwhether B & K performed all of its work in accordance with the plans and specifications of the Project. For example, in his deposition, Mr. Andrews admitted that under paragraph 9.7 of B & K’s construction contract with the Corps, the threshold for vibrations was .25 inches per second and that the Corps provided those specifications to B & K. However, when asked whether vibrations in excess of .25 inches per second were measured on forty-eight different occasions during the job, Mr. Andrews responded: “I’m not aware how many occasions but the contract says if we do exceed it we’re supposed to take immediate action to reduce it. That’s what we did.” We find that Mr. Andrews’ answer establishes that a genuine issue of material fact remains as to whether B & K had in fact exceeded the vibration limitations called for in its construction contract with the Corps. Further, when asked whether B & K was informed of the excessive vibrations when they happened, Mr. Andrews indicated that B & K should have been informed, but he could not find any records of being informed of excessive vibrations and did not recall receiving any such reports from the Parish or the Corps. However, Mr. Andrews’ inability to find any records of this nature or to recall receiving any reports of this nature does not exclude the possibility that B & K did in fact receive such records and reports, and thus a genuine issue of material fact remains as to whether B & K did in fact receive such records and reports.[7] Mr. Andrews further admitted in his deposition that B & K’s construction contract with the Corps contained the following provisions: “[t]he contractor shall at his or her own expense remove and replace any damaged structures and roadways caused by the negligence of his/her construction work,” and that “[tjhese existing buildings, houses, swimming pools, fences, pavements and other structures are located very 121 close to Gardere Canal, and damages to these structures may occur due to construction activities.” Further, contrary to the statement contained in his affidavit that B & K “performed all work on this project in accordance with the plans and specifications provided by the Government,” Mr. Andrews admitted in his deposition that he personally visited with two different residents in the area near the Project who complained about damages to their homes caused by the construction on the Gardere Canal. Further, Mr. Andrews stated in his deposition that he could not recall receiving Mr. Hinkamp’s letter referencing complaints resulting from the vibrations monitoring. However, Mr. Andrews’ simple failure to recall whether B & K received Mr. Hinkamp’s *1222 said letter does not confirm that B & K did not in fact receive such letter, and thus a genuine issue of material fact remains as to whether B & K did in fact receive such letter.
Accordingly, for the foregoing reasons, we find that genuine issues of material fact remain as to whether B & K performed all of its work in accordance with the plans and specifications of the Project. As such, B & K has failed to show as a matter of law that it is entitled to statutory contractor immunity pursuant to La. R.S. 9:2771.

Government contractor immunity

Plaintiffs also argue that summary judgment was also inappropriate because B & K failed to prove its affirmative defense of government contractor immunity, in particular because: (1) there were no “reasonably precise specifications” concerning the methods of pile-driving and use of equipment on the site; (2) even where there were reasonably precise specifications, ie., concerning the maximum allowable vibration levels on the Project, B & K’s work did not conform to those specifications; and (3) B & K did not warn the United States about the dangers in the pile-driving operation which were known to the contractor but not to the United States.
| {¡¡¡The government contractor immunity defense provides that contractors hired by the government cannot be held liable for performing their contracts in conformity with specifications established by the government. Hercules, Inc. v. United States, 516 U.S. 417, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996), and Boyle v. United Tech. Corp., 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). In order for a contractor to assert the government contractor defense, three prongs must be met: (1) the government must have approved reasonably precise specifications; (2) the work must have conformed to the specifications; and (3) the contractor must have warned of any dangers that were known to the contractor, but not the government. The contractor is not required to warn of dangers which it should have known, only dangers about which it had actual knowledge. ■ Kerstetter v. Pacific Scientific Company, 210 F.3d 431 (5th Cir.2000).
Again, considering the conclusory attestations contained in the affidavits B & K filed in support of its motion for summary judgment, as noted above, along with the exhibits submitted by plaintiffs, and Mr. Andrews’ deposition submitted by B & K, we find that B & K has failed in its burden of showing that no genuine issues of material fact remain regarding whether the work it performed conformed to the plans and specifications of the contract. The second prong of this defense has not been met.
For the foregoing reasons, we find that genuine issues of material fact remain as to the claims plaintiffs have asserted against B & K, and as such, B & K is not entitled to judgment as a matter of law. Accordingly, we reverse the trial court’s grant of summary judgment in favor of B &K

CONCLUSION

For the foregoing reasons, the trial court’s grant of summary judgment in favor of the Parish of Jefferson is hereby affirmed. Further, the trial court’s denial | jgof plaintiffs’ motion for leave to file their fifth amending and supplemental petition and its granting of the Parish’s motion to strike this pleading are also hereby affirmed. However, the trial court’s grant of summary judgment in favor of B & K Construction Company, Inc. is hereby reversed. Finally, this matter is remanded to the trial court for further proceedings consistent with this opinion.

*1223
AFFIRMED IN PART; REVERSED IN PART; REMANDED

. Plaintiffs also filed supplemental petitions naming other defendants that are not relevant to this proceeding.

. The summary judgment in favor of the Parish is appealed in No. 12-CA-215. The summary judgment dismissing B & K is appealed in No. 12-CA-488.

. The Gardere Canal is a drainage system which was one of multiple projects collectively referred to as the SELA Project. The SELA Project was Congressionally authorized pursuant to the Energy and Water Development Appropriations Act of 1996 and the Water Resources and Development Act of 1996 and the various projects were constructed in cooperation with the local parishes. The primary purpose of the Gardere Canal Project was urban flood control improvement.

. Previously, this Court entertained an earlier appeal filed by plaintiffs of a trial court judgment that granted the Parish’s motion for summary judgment, wherein the Parish claimed immunity from suit pursuant to La. R.S. 29:735, the Louisiana Emergency Assistance and Disaster Act. This Court reversed that judgment, finding that statute inapplicable to the instant case. Banks v. Parish of Jefferson, 08-27 (La.App. 5 Cir. 6/19/08), 990 So.2d 26, writ denied, 08-1625 (La.10/24/08), 992 So.2d 1043.

. 06-1223 (La.App. 4 Cir. 1/30/08), 975 So.2d 698, 709-10, writ denied, 08-0607 (La.6/27/08), 983 So.2d 1289, and writ denied, 08-0664 (La.6/27/08), 983 So.2d 1289, and writ denied, 08-0671 (La.6/27/08), 983 So.2d 1289, and writ denied, 08-0672 (La.6/27/08), 983 So.2d 1290, and writ denied, 08-0673 (La.6/27/08), 983 So.2d 1290, and writ denied, 08-0674 (La.6/27/08), 983 So.2d 1290, and writ denied, 08-0675 (La.6/27/08), 983 So.2d 1291, and writ denied, 08-0682 (La.6/27/08), 983 So.2d 1291.

. Prior to these motions for summary judgment being filed, in 2000, B & K filed a third-party demand against the Corps, who removed the suit to the U.S. District Court for the Eastern District of Louisiana. The Corps filed a motion for summary judgment arguing discretionary immunity, which was granted in 2001, whereupon the suit was remanded to state court. Samuel Banks et al. v. Parish of Jefferson et al., Civil Action No. 00-2956 (E.D.La.9/14/01).

. In his deposition which was taken on November 2, 2010, Mr. Andrews acknowledged that he had been continuously employed by B & K since before B & K worked on the Gardere Canal Project, and had been actively involved in the Gardere Canal Project on behalf of B & K. Although this litigation had been pending for over ten years as of the time Mr. Andrews was deposed, he testified several times during the course of his deposition that he could not locate or recall much of the information and documentation he was questioned about during the course of his deposition, including information and documentation that was very pertinent to the issues involved in this litigation.