Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,872-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROSEMARY GRIMSLEY                          Plaintiff-Appellant

versus

LIBERTY MUTUAL                             Defendants-Appellees
INSURANCE COMPANY,
JAMES CONSTRUCTION
GROUP, LLC, AND
STATE OF LOUISIANA

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 77,227

Honorable Charles Blaylock Adams, Judge

* * * * *

GREGORIO, CHAFIN, JOHNSON,                 Counsel for Appellant,
TABOR & FENASCI, L.L.C.                     Rosemary Grimsley
By: Charles E. Tabor
    Scott J. Chafin, Jr.


DANIEL J. POOLSON, JR.


BREAZEALE, SACHSE & WILSON, LLP            Counsel for Appellees,
By: Thomas R. Temple, Jr.                  Liberty Mutual Insurance
    Joseph J. Cefalu, III                  Company and James
                                           Construction Group


DONOHUE PATRICK & SCOTT, PLLC              Counsel for Appellee,
By: Leigh F. Groves                        Arcadis U.S., Inc.

* * * * *

Before WILLIAMS, STEPHENS, and THOMPSON, JJ.

**STEPHENS, J.**

Rose Mary Grimsley, plaintiff in these proceedings, appeals a judgment by the 42nd Judicial District Court, Parish of DeSoto, State of Louisiana, granting a motion for summary judgment in favor of defendants, James Construction Group, LLC, and its insurer, Liberty Mutual Insurance Company. For the following reasons, we affirm the trial court's judgment.

## FACTS

Rose Mary Grimsley was involved in a single-vehicle collision on March 11, 2015, at approximately 9:00 p.m. She was traveling southbound on Highway 5 in Logansport, Louisiana, when she approached a stop sign where Hwy. 5 intersected with U.S. Highway 84. She attempted to make a left turn onto Hwy. 84, which is a two-lane highway running east/west, when she collided with a temporary construction barrier while making her turn.

At the time, Hwy. 84 was under construction by James Construction Group, LLC ("James Construction"). Because the highway spanned Louisiana and Texas, the work was being performed jointly for the Louisiana Department of Transportation and Development (the "La. DOTD") and the Texas Department of Transportation (the "Texas DOT"). As of the day of Grimsley's incident, construction on that particular intersection had reached a new phase—previous traffic control had been in place for 431 days. However, on that particular day and in the course of the construction project, pursuant to the plans and specifications provided to James Construction by the Texas DOT, the highway lanes had been shifted north (closer to Hwy. 5) so construction could take place on the eastbound lane of Hwy. 84. On that day, the temporary construction lanes consisted of: (1) the former westbound shoulder (now the temporary westbound lane), and

(2) the former westbound land (now the temporary eastbound lane). These temporary lanes were marked with yellow and white construction "buttons." Outside of the buttons, a temporary construction barrier was placed. At issue in this case was that "low profile concrete barrier," which was installed to mark the edge of the temporary eastbound lane and to prevent traveling vehicles from entering the construction site. There were also electronic traffic control warning signs to alert drivers displaying notice of the construction on Hwy. 5 southbound—the direction in which Grimsley was traveling. Finally, James Construction painted on the ground a white "stop bar" to accompany the stop sign on Hwy. 5. All of these traffic devices were provided for in the project plans and specifications.

As a result of striking the concrete barrier on the night of March 11, Grimsley filed suit against James Construction, Liberty Mutual, and the La. DOTD. According to Grimsley, on that date, "while dark at night," she "crashed into a dangerous and improperly constructed concrete barrier," which had been erected by James Construction in connection with its construction work on Hwy. 84. She later amended her petition to add the design and engineering firm which prepared the Hwy. 84 plans—Arcadis U.S. Inc. Ultimately, James Construction and Liberty Mutual filed a motion for partial summary judgment claiming immunity pursuant to La. R.S. 9:2771, which the trial court granted. This appeal by Grimsley ensued.

## DISCUSSION

### Legal Principles

Summary judgments are reviewed *de novo* using the same criteria that govern the trial court's consideration of whether a summary judgment should be granted. *Richard v. Hall*, 2003-1488 (La. 4/23/04), 874 So. 2d

2

131; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130; *Capital One Bank (USA) NA v. Thompson*, 47,994 (La. App. 2 Cir. 5/15/13), 115 So. 3d 704. We view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So. 2d 764. When considering a motion for summary judgment, it is improper to weigh the evidence or determine the truth of the matter; rather, the trial court is to determine only whether there is a genuine issue of fact for trial. *Franklin, supra.*

Louisiana C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A genuine issue is one about which reasonable persons could disagree. *Hines, supra*; *Franklin, supra.* A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Hines, supra*; *Franklin, supra.* Whether a fact is "material" for purposes of summary judgment is determined in light of the substantive law applicable to the particular case. *Richard, supra.*

Any person or firm contracting with the highway department to repair a road owes a duty to the public to perform the contract in such a manner so as not to expose those using the roads to any dangers which could be prevented by the use of ordinary and reasonable care. *Upchurch v. State, ex*

3

*rel. Louisiana Dep't of Transp.*, 45,761 (La. App. 2 Cir. 1/5/11), 57 So. 3d 361, *writs denied*, 2011-0362 and 2011-0363 (La. 5/20/11), 63 So. 3d 977. This obligation on the part of the highway department and the contractor imposes a duty to adequately warn motorists of the existence of any dangers created by the road repairs. *Id.*; *Hale v. Aetna Cas. & Sur. Co.*, 273 So. 2d 860 (La. App. 2 Cir. 1973), *writ denied*, 275 So. 2d 867 (La. 4/19/73). A contractor doing construction work on a public highway has a duty to mark, barricade, or warn the public of conditions in the construction site which pose an unreasonable risk of harm. *Upchurch, supra.*

Nonetheless, the substantive law upon which James Construction's defense is based arises from La. R.S. 9:2771, which provides, in pertinent part:

> No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications.

This statute departs from the more general standard that every construction contract be performed in a good, workmanlike manner, free from defects in materials and workmanship. *Caskey v. Merrick Const. Co., Inc.*, 46,886 (La. App. 2 Cir. 3/14/12), 86 So. 3d 186, *writ denied*, 2012-0847 (La. 6/1/12), 90 So. 3d 442; *Allstate Enterprises, Inc. v. Brown*, 39,467 (La. App. 2d Cir. 6/29/05), 907 So. 2d 904.

A contractor's immunity to third parties for defects in the work constructed, under the article governing nonliability of a contractor for destruction or deterioration of work, results from proof of compliance with

4

plans and specifications alone. *Banks v. Par. of Jefferson*, 12-215 (La. App. 5 Cir. 1/30/13), 108 So. 3d 1208; *Cormier v. Honiron Corp.*, 00-446 (La. App. 3 Cir. 9/27/00), 771 So. 2d 193. In general, a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations; however, a contractor is not the guarantor of the sufficiency of plans and specifications drawn by another, and if it complies with those plans and specifications, it is entitled to statutory immunity. *Banks, supra*; *Morgan v. Lafourche Recreation Dist. No. 5*, 2001-1191 (La. App. 1 Cir. 6/21/02), 822 So. 2d 716, *writ denied*, 2002-1980 (La. 10/25/02), 827 So. 2d 1156. Under the contractor immunity statute, a contractor cannot rely blindly on plans and specifications, but rather, to avoid liability, the contractor must prove either that the condition created was not hazardous or that it had no justifiable reason to believe that its adherence to the plans and specifications created a hazardous condition. *Banks, supra* at 1218; *Morgan, supra* at 721; *Bernard v. State through Dep't of (Highways) Transp. & Dev.*, 93-1376 (La. App. 3 Cir. 6/1/94), 640 So. 2d 694, 700, *writ denied*, 1994-1814 (La. 10/14/94), 643 So. 2d 165.

Tort immunity is a special or affirmative defense that must be specially pleaded in an answer and for which the one asserting the defense has the burden of proof. *Walls v. American Optical Corp.*, 1998-0455 (La. 9/8/99), 740 So. 2d 1262. Immunity statutes are strictly construed against the party claiming the immunity and must not be extended beyond their obvious meaning. *Weber v. State*, 635 So. 2d 188 (La. 1994); *Monteville v. Terrebonne Parish Consol. Gov't.*, 567 So. 2d 1097 (La. 1990); *Caskey, supra*.

*Legal Analysis*

On appeal, Grimsley brings two related assignments of error. First, she argues that the trial court erred in granting summary judgment in James Construction's favor when it concluded that James Construction neither knew nor should have known that installing a nonreflective low profile concrete barrier at a high-traffic intersection created a hazardous condition, when a wreck occurred within hours of installation. Second, she maintains the trial court erred in determining on summary judgment that James Construction was entitled to contractor's immunity when it failed to install nighttime reflectors warning motorists at an intersection that a 22-inch barrier was placed in the roadway. We disagree that the trial court was in error for the following reasons.

Initially, we note there is no dispute that James Construction followed the plans and specifications for the intersection construction site without deviation. In support of its motion for summary judgment and position that its adherence to the plans and specifications did not created a hazardous condition, it submitted deposition testimony of three individuals connected with the subject intersection and construction.

David Huckabay was the project manager for James Construction on the construction site. Huckabay confirmed that Grimsley hit a "low profiled concrete barrier" that James Construction had installed in connection with the construction being performed at the intersection. According to Huckabay, James Construction does not "design, review or make any recommendations for project plans. It simply builds on what another entity has proposed in the project plans[.]" Huckabay described the traffic control devices in place for southbound Hwy. 5 motorists to alert them of the Hwy.

6

84 construction: striping or reflective buttons on the roadway designating the construction lanes and electronic traffic control warning signs. Huckabay related that James Construction had no input on what traffic control devices were put in place; they "build it like the plans show." In fact, he stated there was no situation were James Construction wanted to deviate from the plans for this phase of construction. Finally, Huckabay confirmed that Texas DOT inspectors approved of the placement of the barrier, and it had inspectors on site mostly on a daily basis. Significantly, he stated the Texas DOT inspectors never notified James Construction that it had failed to comply with the plans and specifications for the construction site or that the barrier as placed created a hazardous condition.

Robert Horne was also deposed. At the time of the incident, he was a project engineer for James Construction, and he reported directly to David Huckabay. Horne recalled that the plans called for reflectors on the barrier in an east/west direction, which reflectors were intended to increase visibility and delineate traffic for the east/west moving motorists on Hwy. 84. According to Horne, in his position as project engineer, he evaluated the project for hazards on a daily basis, and he determined that no hazards existed for this construction site. Horne also reiterated Huckabay's description of the types of traffic control devices at the intersection: reflective buttons on the traffic lanes and electronic traffic control warning signs. Horne estimated the barrier was 20-30 feet away from the Hwy. 5 traffic. As stated by Huckabay, Horne confirmed that James Construction complied with the plans and specifications regarding the intersection construction and specifically the barrier's condition.

7

Finally, James Construction offered the deposition testimony of Kelly Morris, the engineer who designed the plans for the highway construction project involving the intersection at issue. Morris stated that as the project engineer, she included the reflectivity plans for the intersection, and she described why a low-profile barrier would be used during construction. In this situation, Morris explained, the barrier was used to provide protection between vehicles and construction workers, as well as to provide protection to vehicles from drop-offs in the roadway. Further, she noted that these project plans required reflectors on the barrier in the direction of travel or parallel to travel—*i.e.*, in an east/west direction on Hwy. 84. Morris also stated that she knew of no standard calling for the reflectivity on the barrier for the southbound Hwy. 5 traffic. Morris noted that James Construction complied with the plans and specifications related to the work performed at the intersection of Hwy. 84 and Hwy. 5.

Grimsley maintains the trial court erred in determining on summary judgment that James Construction was entitled to contractor's immunity when it failed to install nighttime reflectors on the barrier placed at this intersection. Grimsley makes no allegations that the company deviated from the project plans and specifications. In the instant case, it is undisputed that James Construction complied with the plans and specifications as they addressed the reflective requirements for the intersection. Those plans did not call for reflectors on the barrier toward the Hwy. 5 traffic. Both James Construction employees involved with the construction project, Huckabay and Horne, stated that the company complied with the project plans and specifications. They both noted that James Construction was not responsible for the design aspect of the construction site. Huckabay and Horne also

8

described the daily inspections by Texas DOT to ensure that construction was in compliance with project plans. Moreover, Morris, the actual engineer who designed the site, confirmed that James Construction complied with the plans and specifications she designed for the intersection. Considering that a contractor's immunity to third parties for defects in the work constructed results from proof of compliance to plans and specifications, we conclude that for purposes of summary judgment, James Construction has met its burden of showing entitlement to the immunity afforded by La. R.S. 9:2771. Thus, Grimsley's assignment of error on this issue is without merit.

Grimsley also argues that the trial court erred in granting summary judgment in James Construction's favor when it concluded that James Construction neither knew nor should have known that installing a nonreflective low-profile concrete barrier at a high-traffic intersection created a hazardous condition. To avoid summary judgment, it was incumbent on Grimsley to show there was genuine issue of material fact as to whether James Construction knew or should have known that the absence of reflectors on the barrier created a hazardous condition. *See, Rosato v. Louisiana Dept. of Transp. & Dev.*, 1997-2543 (La. App. 4 Cir. 5/27/98), 714 So. 2d 862, 867, *writ denied*, 1998-1739 (La. 10/9/98), 726 So. 3d 33, and *Lingoni v. Hibernia Nat. Bank*, 2009-0737 (La. App. 4 Cir. 3/3/10), 33 So. 3d 372, *writ denied*, 2010-0714 (La. 5/28/10), 36 So. 3d 255. In other words, after concluding that James Construction complied with the project plans and specifications, we must determine whether the contractor blindly relied on those plans and specifications and created a hazardous condition at the intersection. In this particular case, we conclude that James Construction did not.

9

Grimsley's only opposition on this issue is the affidavit of James Valenta, a professional civil engineer with a master's degree in civil engineering and over 44 years' experience in traffic safety research, highway and traffic engineering design, and roadway maintenance. In support of Grimsley's position, Valenta opines:

> Because James did not place reflectors for southbound La. Hwy. 5 traffic on the . . . Barrier or the pavement, southbound travelers on La. Hwy. 5 were not provided any reflective nighttime notice that the travel layout had been altered. This created an unreasonable risk of harm to all southbound traffic on La. Hwy. 5.

He further opined that "James should have realized that its actions created a hazardous nighttime condition at the intersection. Moreover James had a duty to do so in the contract." However, in this case, we conclude Valenta's affidavit did not create a genuine issue of material fact, considering the actual facts at hand. See *Murphy v. Savannah*, 2018-0991 (La. 5/8/19), --- So. 3d ---, where the plaintiff's affidavit offered in opposition to a motion for summary judgment was devoid of factual foundation, it was insufficient to defeat a properly supported motion for summary judgment.

The evidence produced by James Construction shows that the company's head was not buried in the sand as to the issue of potential hazards at the intersection. Here, the plans and specifications provided to James Construction called for reflective buttons striping the lanes as well as traffic control warning signs cautioning motorists of the construction—steps that James Construction unquestionably complied with at the site. Further, both were devices which James Construction reasonably relied on to alert motorists of any hazardous condition at the intersection. Additionally, Morris stated that there was nothing about the field conditions to indicate

10

any alterations to the plans were warranted—*i.e.*, she deemed the plans and specifications to be reasonable as to alerting motorists of the hazardous condition of that intersection. Albeit there were no reflectors on the barrier, the undisputed facts clearly show that measures were in place to alert motorists to any hazards at the intersection. Although the barrier had no north-facing reflectors (aimed at southbound traffic on Hwy. 5), the intersection clearly was not devoid of warnings to motorists regarding the condition. Valenta's opinion does not articulate any industry standards to contradict the sufficiency of warning devices utilized by James Construction at the site; thus there is no foundation for his stated opinion. We agree that James Construction neither knew nor should have known that installing a nonreflective barrier, as called for in the project plans and specifications, created a hazardous condition at this particular intersection. This assignment of error is without merit.

## CONCLUSION

There is no dispute that James Construction complied with the plans and specifications for the highway construction site, and it was entitled to immunity under La. R.S. 9:2771. Furthermore, Grimsley did not come forth with any evidence creating a genuine issue of material fact on the issue of James Construction's knowledge that the concrete barrier, as it was configured, created a hazardous condition at this construction site. Therefore, the trial court was not in error in granting James Construction's motion for summary judgment and dismissing Grimsley's claims against it. These assignments of error are without merit, and the judgment in favor of James Construction Group, LLC, and its insurer, Liberty Mutual Insurance

11

Company, granting their motion for summary judgment is affirmed. All costs of this appeal are assessed to Rosemary Grimsley.

**AFFIRMED.**