ROTHENBERG, J.
The plaintiff, MPA Brickell Key, LLC (“MPA”), appeals an order granting the defendants’, The Fallstaff Group, Inc. *880 (“Fallstaff’) and Courvoisier Courts, LLC (“Courvoisier”), motion for summary judgment as to MPA’s claim for contractual indemnification; an order granting Cour-voisier’s motion for summary judgment as to MPA’s claim for unjust enrichment; and the final judgment entered in favor of Fallstaff and Courvoisier. We reverse and remand for further proceedings consistent with this opinion.
In November 2002, MPA entered into an agreement to sell real property on Briekell Key to Fallstaff. A portion of the real property was subject to a Shared Facilities Agreement (“SFA”) with a neighboring property owner, FBEC-Brickell Key Cen-tre, L.P. (“FBEC”), addressing, in part, the payment of real property taxes for properties separately owned by MPA and FBEC, but billed by the property appraiser under a single folio number — Folio No. 11. Pursuant to the SFA, MPA agreed to pay the real property taxes billed under Folio No. 11, and thereafter, MPA would invoice FBEC for its 1% share. In addition to the sales agreement, MPA and Fallstaff entered into a letter agreement, which, in part, postponed the closing of the sales agreement between MPA and Falls-taff, and further provides, in relevant part:
2. Reference is made to certain disputes between [MPA] and Jones Lang LaSalle (“JLL”) concerning a certain Shared Facilities Agreement (“the SFA”). [MPA] and Fallstaff have agreed that [MPA] will, at Closing under the Agreement, pay Fallstaff $110,000 (including within the $110,000, $10,000 for gate removal) in full payment of all of [MPA’s] obligations with respect to these disputes (the “SFA Dispute”) and all amounts owed by [MPA] under the SFA through the date of the Closing. In recognition of this fact, Fallstaff hereby agrees to indemnify and hold harmless [MPA] and all of its equity holders, officers, employees, agents and representatives with respect to any liability under or in connection with the SFA (including any liability with respect to legal fees or court costs).
On the day of closing, Fallstaff assigned the sales agreement to Courvoisier, an affiliate of Fallstaff, agreeing that Fallstaff and Courvoisier would “be jointly and severally liable under and pursuant to the Agreement.” The assignment further provided that Courvoisier “shall perform all obligations, duties and liabilities of [Falls-taff] under the Agreement.” At closing, Courvoisier received the $110,000 credit set forth in the letter agreement, and the letter agreement was included in the closing binder.
A few months after the closing, FBEC discovered that in 2002, the property appraiser removed FBEC’s property from Folio No. 11, and began to bill FBEC under Folio No. 12. However, because MPA was unaware of this tax folio split, MPA continued to invoice FBEC for 1% of the taxes billed under Folio No. 11 for tax years 2002-2004. FBEC paid MPA approximately $14,000 for the 2002 taxes, but due to an unrelated dispute, did not pay MPA the amounts invoiced for tax years 2003 and 2004. As FBEC was unaware of the tax folio split, FBEC did not pay its tax obligations due under Folio No. 12, and tax certificates were entered against FBEC’s property.
FBEC, through counsel, demanded from MPA “$43,215.07 (the amount paid by [FBEC] to MPA), plus $7,593.56 (the amount of costs penalties and interest paid).” In response, MPA, through counsel, notified FBEC that it had no knowledge of the tax folio split; the real property in question was sold to a third party; MPA is not “responsible for resolving any disputes, past or present, under the Shared Facilities Agreement, pursuant to an agreement as part of the transaction”; and any correspondence should be directed *881 to Fallstaff, as the new owner. After Fallstaff refused to reimburse FBEC, FBEC filed suit against MPA. MPA filed its answer and affirmative defenses, and a third-party complaint against Fallstaff, seeking indemnification. The third-party complaint was dismissed without prejudice. After discovery, the parties acknowledged that MPA did not have knowledge of the tax folio split when MPA invoiced FBEC for the 2002-2004 taxes. MPA and FBEC then settled for $17,000, a fraction of what FBEC initially demanded from MPA, stipulating that MPA had not engaged in wrongful conduct “with regards to the billing, collection and payment of property taxes.”[1]
Following the settlement, MPA filed an amended complaint against Fallstaff and Courvoisier, asserting a claim for contractual indemnification, seeking the $17,000 MPA paid to FBEC, plus attorney’s fees and costs incurred in that action (Count I). In the alternative, MPA alleged unjust enrichment against Courvoisier based on the $110,000 credit Courvoisier received at closing (Count II).
Fallstaff and Courvoisier moved for summary judgment as to the claim for contractual indemnification. At the hearing, the trial court agreed with the defendants’ assertion that, although MPA’s initial conduct in billing FBEC for the 2002-2004 property taxes was an innocent mistake, once MPA confirmed the tax folio split, MPA should have returned the wrongfully collected money to FBEC. Instead, MPA forced FBEC to pursue an action against MPA to recoup the wrongfully collected money, and as a result of this wrongful conduct, MPA was not entitled to indemnity. Further, as to Courvoi-sier, the trial court ruled that Courvoisier did not agree to indemnify MPA. Based on these rulings, the trial court granted summary judgment in favor of Fallstaff and Courvoisier as to MPA’s claim for contractual indemnification.
Courvoisier then moved for summary judgment as to MPA’s alternative claim for unjust enrichment. At the hearing, the trial court ruled that Courvoisier was not unjustly enriched, and, therefore, granted summary judgment in favor of Courvoisier.
The trial court entered final judgment in favor of the defendants. MPA’s appeal followed.
MPA contends the trial court erred in granting summary judgment in favor of Fallstaff and Courvoisier as to MPA’s claim for contractual indemnification. We agree.
As to Courvoisier, we disagree with the trial court’s ruling that the indemnification provision in the letter agreement is not binding on Courvoisier. The letter agreement specifically references the sales agreement between MPA and Fallstaff, and the letter agreement sets forth relevant matters pertaining to the closing of the sales agreement. As such, these agreements are part and parcel of the same transaction. See Huntington on the Green Condo. v. Lemon Tree I-Condo., 874 So.2d 1, 4 (Fla. 5th DCA 2004) (“[Wjhere two contracts are part and parcel of the same general transaction, they may under some circumstances be interpreted together.”); Computer Sales Int’l, Inc. v. State, Dep’t of Revenue, 656 So.2d 1382, 1384 (Fla. 1st DCA 1995) (“Instruments entered into on different days but containing the same subject matter may, under appropriate circumstances, be regarded as one contract and interpreted together.”).
Pursuant to the letter agreement, MPA and Fallstaff agreed that “at Closing un *882 der the Agreement,” Fallstaff would receive a $110,000 credit from MPA “in full payment” of “all of [MPA’s] obligations with respect” to certain disputes under the SFA, and in consideration of the $110,000 credit from MPA, Fallstaff agreed to indemnify MPA for “liability under or in connection with the SFA.” Further, the assignment from Fallstaff to its affiliate, Courvoisier, provides that Courvoisier “shall perform all obligations, duties and liabilities of [Fallstaff] under the Agreement.”
At closing, Courvoisier received from MPA the $110,000 credit set forth in the indemnification provision of the letter agreement, and the letter agreement was included in the closing binder. Under these circumstances, we conclude that, as a matter of law, Courvoisier is bound by the letter agreement, including the provision to indemnify MPA for “liability under or in connection with the SFA.” Therefore, we reverse the order granting summary judgment in favor of Courvoisier as to MPA’s claim for contractual indemnification.
Next, as to Fallstaff, we reject the trial court’s ruling that MPA was not entitled to indemnification based on MPA’s wrongful conduct — MPA’s failure to return the money to FBEC once MPA confirmed the tax folio split, and MPA’s defense of the action filed by FBEC. First, there was no wrongful conduct on MPA’s part by failing to tender the amounts set forth in FBEC’s demand letter. FBEC demanded significantly more from MPA than FBEC actually paid to MPA for the taxes billed under Folio No. 11 for tax years 2002-2004. Further, MPA’s response to the demand letter clearly indicates that MPA was unaware of the tax folio split and, more importantly, the real property in question was sold to a third party. Pursuant to an agreement that was a part of that transaction, MPA believed it was no longer responsible for “resolving any disputes, past or present, under the Shared Facilities Agreement.” Second, there was no wrongful conduct on MPA’s part for defending the action FBEC filed against MPA. In defending the action, MPA set forth valid affirmative defenses, including the indemnification provision set forth in the letter agreement. Therefore, we reverse the order granting Fallstaff s motion for summary judgment as to MPA’s claim for contractual indemnification.
Based on this Court’s reversal of the summary judgment entered in favor of Fallstaff and Courvoisier on MPA’s claim for contractual indemnification, we do not address MPA’s alternative contention that the trial court erred in granting summary judgment in favor of Courvoisier on MPA’s alternative claim for unjust enrichment. Accordingly, we reverse both the order granting summary judgment in favor of Courvoisier and Fallstaff as to MPA’s claim for contractual indemnification and the final judgment entered in favor of Courvoisier and Fallstaff. We remand for further proceedings, including a determination of whether the claim FBEC and MPA settled was covered by the indemnification provision in the letter agreement.
Reversed and remanded.

. In 2005, Courvoisier paid FBEC the amounts MPA invoiced, but did not collect, for the 2003 and 2004 property taxes in Folio No. 11.