# Third District Court of Appeal

## State of Florida

Opinion filed August 6, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2183
Lower Tribunal No. 10-16056
_____

**The Fallstaff Group, Inc., etc., et al.,**
Appellants,

vs.

**MPA Brickell Key, LLC, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Norma S. Lindsey, Judge.

Irv J. Lamel; Hicks, Porter, Ebenfeld & Stein and Dinah Stein and Shannon Debus-Horn, for appellants.

Coffey Burlington and Daniel F. Blonsky, for appellee.

Before WELLS, EMAS and SCALES, JJ.

EMAS, J.

The Fallstaff Group, Inc. ("Fallstaff") and Courvoisier Courts, LLC ("Courvoisier") appeal a final judgment, an amended final judgment, and two orders entering partial summary judgment in favor of MPA Brickell Key, LLC ("MPA"). For the reasons that follow, we affirm in part and reverse in part.

## BACKGROUND

In November 2004, MPA entered into an agreement to sell real property on Brickell Key to Fallstaff. A portion of the real property was subject to a Shared Facilities Agreement ("SFA") with a neighboring property owner, FBEC-Brickell Key Centre, L.P. ("FBEC"). The SFA addressed, in part, apportionment of ad valorem taxes for properties separately owned by MPA and FBEC, but billed by the property appraiser under a single folio number. Pursuant to the SFA, MPA paid the real property taxes billed under the single folio number—Folio No. 11— and thereafter, MPA would invoice FBEC for its 1% share.

At the time of the proposed sale by MPA to Fallstaff, certain disputes between Fallstaff and FBEC had arisen, which required a postponement of the closing date. Accordingly, MPA and Fallstaff entered into a separate letter agreement, which postponed the closing and further provided, in relevant part:

> 2. Reference is made to certain disputes between [MPA] and Jones Lang LaSalle ("JLL")[1] concerning a certain Shared Facilities Agreement ("the SFA"). [MPA] and Fallstaff have agreed that [MPA] will, at Closing under

_____

[1] Jones Lang LaSalle was FBEC's agent.

2

the Agreement, pay Fallstaff $110,000 (including within the $110,000, $10,000 for gate removal) in full payment of all of [MPA's] obligations with respect to these disputes (the "SFA Dispute") and all amounts owed by [MPA] under the SFA through the date of the Closing. In recognition of this fact, Fallstaff hereby agrees to indemnify and hold harmless [MPA] and all of its equity holders, officer, employees, agents and representatives with respect to any liability under or in connection with the SFA (including any liability with respect to legal fees or court costs).

On the day of closing, Fallstaff assigned the sales agreement to an affiliate, Courvoisier, and agreed that Fallstaff and Courvoisier would "be jointly and severally liable under and pursuant to the Agreement." The assignment further provided that Courvoisier "shall perform all obligations, duties and liabilities of [Fallstaff] under the Agreement." At closing, Courvoisier received the $110,000 credit as set forth in the letter agreement, and the letter agreement was included in the closing binder.

Unbeknownst to the parties, the tax appraiser had created a new tax folio in 2002 ("Folio No. 12"), splitting FBEC's and MPA's property from one another, but the tax bills were never sent to MPA or FBEC. Thus, although its property was being taxed separately from 2002 on, FBEC continued to pay its portion of the ad valorem taxes on Folio No. 11 up to the date of the Fallstaff closing in 2004.

A few months after the closing, FBEC discovered the folio split when tax certificates were issued against its property and, thereafter, demanded from MPA

3

"$43,215.07 (the amount paid by [FBEC] to MPA), plus $7,593.56 (the amount of costs penalties and interest paid)." In response, MPA, through counsel, notified FBEC that it had no knowledge of the tax folio split, that the real property in question was sold, and that all issues should be directed to the new owner, Fallstaff. When Fallstaff also refused to reimburse FBEC, FBEC filed suit against MPA.

In response, MPA filed a third-party complaint against Fallstaff, seeking indemnification as provided under the terms of the letter agreement. The third party complaint was dismissed without prejudice, pending the resolution of FBEC's suit against MPA. After discovery, FBEC acknowledged that MPA did not have knowledge of the tax folio split when it invoiced FBEC for the 2002-2004 taxes, and MPA and FBEC settled their lawsuit for $17,000.

Following that settlement, MPA filed an amended complaint against Fallstaff and Courvoisier, asserting a claim for contractual indemnification, seeking the $17,000 MPA paid to FBEC, plus attorney's fees and costs incurred by MPA in that action (Count I). In the alternative, MPA asserted a claim against Courvoisier for unjust enrichment based on the $110,000 credit Courvoisier received at closing (Count II).

Fallstaff and Courvoisier moved for summary judgment as to the claim for contractual indemnification. At the hearing, the trial court agreed with Fallstaff's

4

and Courvoisier's assertion that, although MPA's initial conduct in billing FBEC for the 2002-2004 property taxes was an innocent mistake, once MPA confirmed the tax folio split, MPA should have returned the wrongfully collected money to FBEC. Instead, MPA forced FBEC to pursue an action against MPA to recoup the wrongfully collected money, and as a result of this wrongful conduct, MPA was not entitled to indemnity. As to Courvoisier, the trial court further ruled that Courvoisier did not agree to indemnify MPA. Based on these rulings, the trial court granted summary judgment in favor of Fallstaff and Courvoisier as to MPA's claim for contractual indemnification.

Courvoisier then moved for summary judgment as to MPA's alternative claim for unjust enrichment. At the hearing, the trial court ruled that Courvoisier was not unjustly enriched, and therefore, granted summary judgment in favor of Courvoisier. The trial court later entered final judgment in favor of Fallstaff and Courvoisier, and MPA appealed.

On appeal, this court held that the trial court erred in granting summary judgment in favor of Fallstaff and Courvoisier. MPA Brickell Key, LLC v. Fallstaff Group, Inc., 92 So. 3d 879 (Fla. 3d DCA 2012). Specifically, we held that (1) the indemnification provision in the letter agreement (including the provision to indemnify MPA) was binding on Courvoisier; and (2) that MPA did not act wrongfully in failing to tender the amounts set forth in FBEC's demand

5

letter or in defending the action because the amount demanded was more than the amount FBEC paid MBA and because MPA believed it was no longer responsible for "resolving any disputes, past or present, under the Shared Facilities Agreement." Accordingly, this court reversed the final judgment and remanded for further proceedings, "including a determination of whether the claim FBEC and MPA settled was covered by the indemnification provision in the letter agreement." Id. at 882.

On remand, MPA moved for partial summary judgment on liability, asserting the settled claim was covered by the indemnification provision in the letter agreement, and therefore, it was entitled to the $17,000 it paid to settle the claims with FBEC, plus interest, as well as attorney's fees and costs for its defense of those claims for four years, and the attorney's fees and costs for its prosecution of the indemnity claim against Fallstaff and Courvoisier, at both the trial court and the appellate court levels.

After a hearing on March 11, 2013, the court granted MPA's motion for partial summary judgment on liability, finding Fallstaff and Courvoisier had breached the contract and were jointly and severally liable for the $17,000 settlement payment. It reserved ruling on other damages. On March 22, it entered another order granting MPA's revised motion for partial summary judgment on liability, finding MPA was entitled to reasonable attorney's fees and costs

6

expended in the underlying FBEC litigation, in the instant indemnification action, and in the prior appeal of the reversed summary judgment. The court entered a final judgment on July 22, 2013, awarding MPA a total of $225,860.11, for which Fallstaff and Courvoisier were held jointly and severally liable. On August 14, 2013, the court entered an amended final judgment, to correct arithmetical errors and update interest calculations, awarding MPA $243,210.73.[2] Fallstaff and Courvoisier appealed, asserting the trial court erred in finding MPA was entitled to indemnification and in awarding attorney's fees to MPA.

**ANALYSIS**

We review de novo an order granting summary judgment. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126 (Fla. 2000). Further, although we generally review a court's ruling on entitlement to attorney's fees for an abuse of discretion, Ocean Club Cmty. Ass'n v. Curtis, 935 So. 2d 513 (Fla. 3d DCA 2006), where that ruling relies upon the interpretation of contractual provisions, our standard of review is de novo. Kapila v. AT&T Wireless Servs., Inc., 973 So. 2d 600 (Fla. 3d DCA 2008).

As for MPA's entitlement to indemnification, we hold that the trial court correctly determined that MPA was entitled to indemnification from Fallstaff and

---

[2] This amount was comprised of the $17,000 settlement amount paid by MPA to FBEC, plus interest; attorney's fees and costs in the FBEC litigation, plus interest; attorney's fees and costs in the prior appeal, plus interest; and attorney's fees and costs for the indemnification action, plus interest.

Courvoisier under the terms of the letter agreement. The language of the letter agreement unambiguously provides for indemnification for "<u>any liability under or in connection with the SFA</u> (including any liability with respect to legal fees or court costs)." Though it is undisputed that this particular dispute between MPA and FBEC did not arise until after the letter agreement was formed, it is nevertheless covered under the broad language (underlined above) employed by the indemnification clause at issue. Thus, MPA was properly awarded the $17,000 it paid to settle FBEC's claims against it.

As to the issue of attorney's fees, the letter agreement provides that Fallstaff (and Courvoisier) must indemnify MPA for "any liability under or in connection with the SFA (including any liability with respect to legal fees or court costs." Fallstaff and Courvoisier assert that this language requires Fallstaff to indemnify MPA only in the event MPA became liable for a third party's legal fees or court costs, not for MPA's own legal fees and court costs. We do not read the language of the letter agreement so narrowly.

We begin with the general rule in Florida that "an indemnitee is entitled to recover, as part of his damages, reasonable attorney's fees and reasonable and proper legal costs and expenses, which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified." <u>Am. & Foreign Ins. Co. v. Avis Rent-A-Car Sys. Inc.</u>, 401 So. 2d 855, 857 (Fla.

8

1st DCA 1981). <u>See also</u>, <u>Fla. Patient's Compensation Fund v. Miller</u>, 436 So. 2d 932 (Fla. 3d DCA 1983). Further, the unambiguous language of the letter agreement included indemnification for legal fees and court costs incurred by MPA in defending itself against the claims brought by FBEC "in connection with the SFA."

As for MPA's entitlement to attorney's fees and costs in the indemnification action (and the first appeal) against Fallstaff and Courvoisier, however, we find that the trial court erred in finding MPA was entitled to recover those fees and costs. Although "attorney's fees incurred in the defense of a claim indemnified against are part of the damages allowable, . . . attorney's fees incurred in establishing the right to indemnification are not allowable." <u>Snider v. Continental Ins. Co.</u>, 519 So. 2d 12, 13 (Fla. 5th DCA 1987) (<u>citing</u> <u>United States Auto. Ass'n v. Hartford Ins. Co.</u>, 468 So. 2d 545 (Fla. 5th DCA 1985)); <u>Am. Home Assurance Co. v. City of Opa Locka</u>, 368 So. 2d 416 (Fla. 3d DCA 1979); <u>Am. & Foreign Ins. Co. v. Avis Rent-A-Car Sys., Inc.</u>, 401 So. 2d 855 (Fla. 1st DCA 1981). Further, "[i]n the absence of a clear and unambiguous contractual provision or a statutory right," MPA is not entitled to attorney's fees incurred in the indemnification action. <u>Sunshine Bottling Co. v. Tropicana Prods., Inc.</u>, 757 So. 2d 1231 (Fla. 3d DCA 2000). Because the indemnification provision at issue does not by its terms provide for MPA's recovery of fees and costs incurred in seeking indemnification,

we hold that the trial court erred in awarding those fees.  We therefore reverse that portion of the judgment, and affirm in all other respects.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.