# Third District Court of Appeal

## State of Florida

Opinion filed January 13, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D13-1904 & 3D13-175
Lower Tribunal No. 09-74660

_____

**Sara Moriber,**

Appellant/Cross-Appellee,

vs.

**Michael Paul Dreiling, et al.,**

Appellees/Cross-Appellants.

Appeals from the Circuit Court for Miami-Dade County, Ellen Leesfield and Lisa S. Walsh, Judges.

Shutts & Bowen LLP, and William Jay Palmer and Stephen T. Maher, for appellant/cross-appellee.

Heller Waldman, P.L., and Glen H. Waldman, Eleanor T. Barnett, and Michael A. Azre, for appellees/cross-appellants.

Before LAGOA, SALTER and SCALES, JJ.

SCALES, J.

Sara Moriber ("Ms. Moriber"), the plaintiff below, appeals the trial court's final summary judgment dismissing her fraud claims against the defendant, the estate of her mother, Leatrice Dreiling (the defendant will be referred to as the "Estate" and Leatrice Dreiling will be referred to as "Decedent"). Ms. Moriber's siblings, Michael Dreiling and Judy Dreiling Lease ("Judy Lease"), are co-personal representatives of the Estate.

The Estate cross-appeals the trial court's denial of its motion for attorney's fees based on a proposal for settlement. The two appeals were consolidated.

For the reasons stated below, we agree with the trial court that, as a matter of law, Ms. Moriber could not have relied upon any representations made by the Decedent, thereby precluding Ms. Moriber's fraud claims. Without further discussion, we also agree with the trial court in its denial of the Estate's motion for attorney's fees. State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So. 2d 1067 (Fla. 2006).

## I.    Facts[1]

### A. *Background Facts*

---

[1] Our presentation of the facts is gleaned from Ms. Moriber's pleadings, affidavits, and memorandum in opposition to the Estate's motion for summary judgment. We consider the facts in the light most favorable to Ms. Moriber, the non-moving party. AJH Prop. Invs. Ltd. v. SunTrust Bank, 89 So. 3d 948, 950 (Fla. 3d DCA 2012).

During his lifetime, Ms. Moriber's father and Decedent's husband, Albert Dreiling ("Mr. Dreiling"), managed Dreiling Medical Management Corporation ("DMM"). Mr. Dreiling created several trusts for the benefit of his wife and children. Mr. Dreiling's will provided that his substantial estate would pour into the Albert Dreiling Revocable Trust, and he appointed Decedent, Ms. Moriber, and Judy Lease as co-trustees upon his death. Mr. Dreiling died in 1993, and Decedent was appointed personal representative of his estate.

Ms. Moriber was a co-trustee and a beneficiary of Mr. Dreiling's trusts. Additionally, Ms. Moriber inherited, among other things, approximately 16.67% of the outstanding shares of common stock in DMM.

In 1995, Decedent created the Dreiling Family Irrevocable Trust ("Trust #2"). Ms. Moriber, Michael Dreiling, and Judy Lease were named co-trustees of Trust #2.

Simultaneous with the creation of Trust #2, the co-trustees entered into a Split-Dollar Agreement with DMM. Pursuant to the Split-Dollar Agreement, DMM would procure and pay the premiums for three life insurance policies, each valued at $1,500,000, insuring Decedent. The life insurance policies were owned by Trust #2. Upon Decedent's death, each of the co-trustees of Trust #2 would receive equal amounts of the balance of the insurance policies' proceeds after DMM was reimbursed for premiums it had paid.

3

Provided no premiums for the policies were overdue, either DMM or the co-trustees could terminate the Split Dollar Agreement by written notice to the parties. In the event the co-trustees cancelled the policies, DMM would receive a portion of the policies' cash-surrender values equal to the total amount of the premiums it paid.

B. *The Parties' Disputes*

In 1996, disputes arose between Ms. Moriber and Decedent, and Decedent decided to sever her business and financial relationships with Ms. Moriber. Decedent ceased communicating with Ms. Moriber and directed Michael Dreiling and Judy Lease to cease all communications with Ms. Moriber regarding Mr. Dreiling's estate, Mr. Dreiling's trusts, DMM, and Trust #2.

In 1997, Decedent caused DMM to stop paying premiums for the three life insurance policies procured pursuant to the Split Dollar Agreement. Ms. Moriber was not notified, by written notice or otherwise, that the life insurance policies were cancelled. Ms. Moriber was also not notified that DMM had realized the cash surrender value for the cancelled policies.

From 1998 through 2000, Ms. Moriber, or her counsel, repeatedly demanded accountings and information regarding Mr. Dreiling's estate, Mr. Dreiling's trusts, DMM, and Trust #2.

Specifically regarding Trust #2, in August 1998, Ms. Moriber sent a memorandum to her lawyer that stated, in part, "I assume that we would want to know if the policies have been kept in force, and are still owned by the Trust [#2]. If not, I assume that you might want to consider my options." In late-1998, Ms. Moriber and her counsel made demands for accountings and income tax returns regarding Trust #2.

In 1999, Ms. Moriber instituted litigation relating to proceedings surrounding the probate of Mr. Dreiling's estate.[2] Ms. Moriber sued Decedent and Judy Lease in their capacities as co-trustees of Mr. Dreiling's trusts, claiming, among other things, that Ms. Moriber was being excluded from performing her duties as a co-trustee and that she was not being provided information to which she was entitled.

C. *The Settlement Agreement*

In 2000, Ms. Moriber and Decedent began to negotiate a settlement to resolve the various disputes concerning the requested accountings, DMM, and the

---

[2] In re Estate of Albert Dreiling, in the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 99-6163; Sara Moriber, as Co-Trustee of the Albert Dreiling Marital Trust v. Leatrice Dreiling and Judy Lease as Co-Trustees of the Albert Dreiling Marital Trust, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 99-5450 and Sara Moriber, as Co-Trustee of the Albert Dreiling Revocable Trust and the Albert Dreiling Marital Trust v. Leatrice Dreiling and Judy Lease as Co-Trustees of the Albert Dreiling Revocable Trust and the Albert Dreiling Marital Trust, Dan Heller, Esq. and Robert J. Pristave, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 99-2745.

litigation. As a result of such negotiations, a Settlement Agreement was reached whereby Ms. Moriber would settle all claims in exchange for (i) $3,550,000 million in cash; (ii) her one-third interest in the life insurance policies procured pursuant to the Split-Dollar Agreement; and (iii) a pro rata share of DMM's interest in the Split-Dollar Agreement (DMM's interest being the right to repayment of the policies' premiums) in exchange for Ms. Moriber's shares in DMM.

The Settlement Agreement required Ms. Moriber to resign as co-trustee of Mr. Dreiling's trusts, and to renounce all interest in Mr. Dreiling's marital trust, Mr. Dreiling's estate, and DMM. The Settlement Agreement also called for the resignation of Ms. Moriber as trustee of Trust #2 "except . . . during the life of [Decedent] and until the proceeds of any insurance policy on her life have been collected and distributed . . . ." Further, the agreement required Ms. Moriber to execute a Release in favor of Decedent and her future assigns and estate.

### D. *Decedent's Death and the Instant Lawsuit*

Upon Decedent's death in February 2009, Ms. Moriber filed a claim against the Estate seeking Ms. Moriber's one-third share of the proceeds from the three life insurance policies.

On September 9, 2009, Ms. Moriber received a letter from Decedent's counsel informing Ms. Moriber that the three life insurance policies were no longer

6

in existence. Ms. Moriber claims this was the first time she learned that the life insurance policies had been cancelled by Decedent some twelve years earlier.

In October 2009, Ms. Moriber filed the instant action against the Estate. Ms. Moriber's amended complaint asserts four counts: breach of the Split-Dollar Agreement (count I); conversion (count II); fraudulent inducement to enter into the Settlement Agreement (count III); and fraudulent misrepresentation regarding the Settlement Agreement (count IV).

The gravamen of the fraud counts, which are the subject of the instant appeal, is that Ms. Moriber would never have entered into the Settlement Agreement had she known that the insurance policies procured pursuant to the Split-Dollar Agreement had been canceled.

### E. *The Trial Court's Summary Judgment – Order on Appeal*

On December 21, 2012, the trial court entered a final summary judgment against Ms. Moriber on all counts. With regard to the two fraud counts, the trial court's summary judgment rested on four independent grounds: (i) Ms. Moriber could not have been fraudulently induced to enter into the Settlement Agreement because no affirmative misrepresentations were made to her regarding the status of the life insurance policies; (ii) even if affirmative misrepresentations were made to Ms. Moriber, her fraud claims were not actionable because she could not rely on such representations; (iii) the Release Ms. Moriber signed in conjunction with the

7

Settlement Agreement precludes her from asserting these claims; and (iv) Ms. Moriber's fraud claims are barred by the statute of limitations.

Ms. Moriber appeals the trial court's summary judgment on her fraud claims against the Estate.

**II.     Analysis**

   A. *Standard of Review and Determinative Issue Analyzed*

The standard of review for an order granting summary judgment is de novo. Fallstaff Group, Inc. v. MPA Brickell Key, LLC, 143 So. 3d 1139, 1142 (Fla. 3d DCA 2014).

The trial court's summary judgment is founded upon four independent grounds, any of which preclude Ms. Moriber's fraud claims. We affirm based on the trial court's conclusion that, even if affirmative misrepresentations were made to Ms. Moriber, Ms. Moriber could not, as a matter of law, rely upon such misrepresentations. We, therefore, need not address the other grounds relied upon by the trial court in entering summary judgment.

   B. *Fraudulent Misrepresentation and Fraudulent Inducement – Elements*

The elements of fraudulent misrepresentation and fraudulent inducement are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance

8

on the representation. See Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2010); GEICO Gen. Ins. Co. v. Hoy, 136 So. 3d 647, 651 (Fla. 2d DCA 2013).

C. *Reliance on Adversaries' Misrepresentations – Columbus Hotel*

Beginning with Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464 (Fla. 1934), Florida state and federal courts have expounded upon these elements, consistently holding that, as a matter of law, a plaintiff may not rely on statements made by litigation adversaries to establish fraud claims.[3]

---

[3] See, e.g., Finn v. Prudential-Bache Sec., Inc., 821 F.2d 581, 586 (11th Cir. 1987) (affirming summary judgment in favor of the defendant because the defendant had no right to rely on the plaintiff's representations because "it [was] clear that the positions of the [parties] were antagonistic."); Pettinelli v. Danzig, 722 F.2d 706, 710 (11th Cir. 1984) (finding the plaintiffs "failed to make a prima facie case of fraud because they had no legal right to rely on any representations" made by "allegedly dishonest parties"); Fuller v. Fuller, 68 So. 2d 177, 178 (Fla. 1953) ("In the divorce proceedings the husband and wife were dealing 'at arm's length.' . . . in such a proceeding she had no right to rely upon her husband to disclose anything to her with reference to his property or business transactions."); Pieter Bakker Mgmt, Inc. v. First Fed. Sav. & Loan Ass'n, 541 So. 2d 1334, 1335 (Fla. 3d DCA 1989) (affirming partial summary judgment in favor of the defendant because "[a] party entering into a transaction is not entitled to rely blindly on the opposing party's representation where, as here, the relationship between the parties has been plagued with distrust"); see also Pepper v. First Union Nat. Bank of Fla., 605 So. 2d 1016, 1017 (Fla. 1st DCA 1992) ("Pepper is precluded, as a matter of law, from defending against the enforcement of the release based on his claim of fraudulent inducement, because, due to the hostile and antagonistic relationship that existed between himself and First Union during the months prior to the execution of the release, Pepper could not reasonably rely on any representations made by First Union); Uvanile v. Denoff, 495 So. 2d 1177, 1180 (Fla. 4th DCA 1986) ("Considering the history of the parties' relationship to each other, Denoff's distrust of Uvanile, the negotiations that preceded the ultimate agreement, Denoff's complete knowledge of the corporate affairs, and the disputes the parties had over the value of the property dictated that Denoff was not justified in relying upon the misrepresentation."); cf. Wilson v. Equitable Life Assur. Soc'y of U.S., 622 So. 2d

In Columbus Hotel, the Florida Supreme Court upheld a settlement between a group of bondholders and a hotel entrepreneur in the face of allegations that the entrepreneur, who was represented by counsel, had used misstatements and false representations to induce the bondholders, who were also represented by counsel, to execute the agreement. The Court found that the bondholders "had no right to rely on any such representations, in view of the fact that the parties were informed and must have understood at all times that they were in hostile relations to each other and were dealing at arm's length." Id. at 487. In reaching its holding, the Court explained, "[t]here can be no ground for complaint against representations where the hearer lacked the right to rely thereon, because he had reason to doubt the truth of the representation, as where . . . a [representor] . . . was obviously hostile to the hearer and interested in misleading him." Id. at 486.

While, in Butler v. Yusem, 44 So. 2d at 105, the Florida Supreme Court recently determined that "justifiable reliance" is not an essential element of fraud, we do not read Butler as receding from the well-established and common sense principle of law espoused in Columbus Hotel and its progeny: generally, adverse parties negotiating a settlement agreement in an attempt to avoid litigation cannot rely upon the representations of one another.[4]

25, 28 (Fla. 2d DCA 1993) ("Because the relationship between Wilson and Equitable was relatively amicable, however, and not a relationship 'plagued with distrust,' we do not have the authority to declare Mr. Wilson's act of faith to be unjustified reliance as a matter of law.") (quoting Bakker, 541 So. 2d at 1335).

In the context of settlement agreements, one party certainly may insist upon certain assurances from the other party. In our opinion, however, such assurances are better enforced through contract principals (e.g., warranties, indemnitees, etc.) rather than fraud claims.

D. *Application of Columbus Hotel*

It is without question that the parties in the instant case had a hostile and antagonistic relationship at the time of Ms. Moriber's alleged reliance on Decedent's representations.[5]

---

[4] As the First District articulated in <u>Henson v. James M. Barker Co., Inc.</u>, 555 So. 2d 901, 907 (Fla. 1st DCA 1990):

> The premise underlying the rule that settlement of an existing dispute precludes any duty of disclosure is that the relations of the parties and the nature of the dispute is such that the parties generally are not justified in relying on representations made by their antagonists in arriving at a settlement and release of the disputed issues.

[5] According to Ms. Moriber, the family dissension began in 1993 with the death of Mr. Dreiling. In 1996, Decedent forced Ms. Moriber and Ms. Moriber's husband out of DMM. Decedent changed the locks of the DMM office and precluded Ms. Moriber from having access to files, records, and any other information regarding DMM. Decedent "froze [Ms. Moriber] out of all family-related information, both business and personal . . . ." Beginning in 1997, Ms. Moriber began formally requesting accountings and other documentation regarding Mr. Dreiling's estate, Mr. Dreiling's trusts, DMM, and Trust #2. When Ms. Moriber's repeated demands for information went unanswered, her lawyer threatened litigation: "[t]here is no pending action before the court, so I cannot file a motion to compel. Please advise as to whether you intend to submit an accounting of this trust, or whether I need to proceed judicially to compel such an accounting." Finally, in 1999, Ms. Moriber instituted litigation against Decedent and Judy Lease (as co-trustees of Mr. Dreiling's trusts) to remove Decedent and Judy Lease from control and to obtain the requested information.

Ms. Moriber knew, or should have known, from her own dealings with the Decedent that Ms. Moriber should not rely on any representations made by the Decedent.

Ms. Moriber does not allege that the Decedent made affirmative misrepresentations to her. Rather, Ms. Moriber alleges that the Decedent induced Ms. Moriber to enter into the Settlement Agreement by failing to mention that certain insurance policies were no longer in existence. While the settlement documents and communications alluded to the existence of the insurance policies, neither Ms. Moriber nor her lawyer ever sought any evidence to confirm that the policies were still in effect before entering into the Settlement Agreement.

Yet, Ms. Moriber contemplated the possibility that the insurance policies were no longer in existence as evidenced by a letter she sent to her lawyer in August 1998, wherein Ms. Moriber specifically directed her lawyer to inquire about the policies' status:

> As respects [Decedent's lawyer's] letter, I noticed several omissions in the matters which he mentioned. I assume that those are intentional . . . . There was no mention of [Trust #2] which holds a group of life insurance policies . . . I assume that we would want to know if the policies have been kept in force, and are all still owned by the Trust [#2]. If not, I assume that you might want to consider my options.

Additionally, as evidenced by a November 20, 1998 letter from Ms. Moriber's lawyer to Decedent's lawyer, Ms. Moriber's lawyer was aware that

Decedent's lawyer was being evasive with regard to Ms. Moriber's repeated demands for accountings and financial information:

> You had represented that accountings for the following trusts would be submitted. . . . Because it is now obvious that you have been misleading me from the beginning, demand is hereby made that all accountings and documentation mentioned be delivered to this office no later than 5:00 p.m. on December 11, 1998.

Subsequently, Decedent's lawyer assured Ms. Moriber's lawyer that the requested information would be provided as soon as possible. The information, however, was never provided.

Without the requested documentation in hand, Ms. Moriber decided to enter into settlement negotiations anyway. During the negotiations, Ms. Moriber was present and represented by counsel. The Settlement Agreement that was ultimately signed was the twelfth iteration of the agreement.

The Settlement Agreement required Ms. Moriber to dismiss, with prejudice, all pending proceedings, lawsuits, objections to accountings, declaratory actions, or other pending proceedings.

Ms. Moriber did not demand inquiry into the relevant matters before signing the Settlement Agreement and Release. Ms. Moriber did not insist that any terms be inserted into the Settlement Agreement regarding the status of the life insurance policies, the value of the Split Dollar Agreement, and/or the contents of the pertinent trusts.

Ms. Moriber now claims that she was fraudulently duped into giving up her DMM stock in exchange for DMM's interest in the Split Dollar Agreement, which Decedent and Decedent's lawyer knew was valueless because the life insurance policies had long been canceled.

We are not unsympathetic to Ms. Moriber's position. As with all litigants approaching settlement, however, Ms. Moriber "had a choice . . . [she] could stand pat and fight." Zelman v. Cook, 616 F. Supp. 1121, 1133 (S.D. Fla. 1985) (quoting City of Miami v. Kory, 394 So. 2d 494, 499 (Fla. 3d DCA 1981). Ms. Moriber, however, chose not to fight; she chose to forego insisting on the accountings in order to settle the litigation with her mother and siblings once and for all.

We concur with the trial court that Columbus Hotel and its progeny control this case. Thus, as a matter of law, Ms. Moriber's fraud claims fail.

## III. Conclusion

Given the parties' hostile relationship at the time of Ms. Moriber's alleged reliance on Decedent's representations, we affirm the trial court's entry of final summary judgment on the fraud claims because Ms. Moriber did not, and cannot, establish a prima facie case for fraud.

Affirmed.

14