[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10218
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-20683-FAM,
Bkcy No. 14-bkc-36362-AJC

In re: JACK KACHKAR,

Debtor.
_____

JACK KACHKAR,

Plaintiff-Appellant,

versus

BANK OF AMERICA CORP,
BANK OF AMERICA, N.A.,
c/o Lawrence Silverman, Esq. Akerman LLP
98 Southeast Seventh Street, #1100 Miami, FL 33131,
BAC HOME LOANS SERVICING, L.P.,
f.k.a. Countrywide Home Loans Servicing, L.P.
c/o Lawrence Silverman, Esq. Akerman LLP
98 Southeast Seventh Street, #1100 Miami, FL 33131,
AKERMAN LLP,
c/o Lawrence Silverman, Esq. Akerman LLP
98 Southeast Seventh Street, #1100 Miami, FL 33131,
JEFFREY ALAN TRINZ,
c/o Lawrence Silverman, Esq. Akerman LLP
98 Southeast Seventh Street, #1100 Miami, FL 33131,
SABADELL UNITED BANK, N.A., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 11, 2019)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Jack Kachkar, proceeding *pro se*, appeals the district court's order affirming

the bankruptcy court's dismissal of his state-law claims, which were originally filed

in state court, stemming from a prior bankruptcy proceeding filed by Kachkar's wife,

Viktoria Benkovitch.  After careful review, we affirm.

**I.**

The relevant facts are as follows.  In April 2014, Kachkar and Benkovitch

entered into a settlement agreement with Bank of America, N.A. ("BANA"), to

resolve a state foreclosure action concerning real property on South Mashta Drive

(the "Mashta property") in Key Biscayne, Florida.  The settlement agreement

provided for the entry of a consent foreclosure judgment and the dismissal and

release of their counterclaims.  It also provided that they could vacate the foreclosure

judgment and be released from their mortgage-loan obligations by paying $6 million

in installments.  To that end, it appears that they made one installment payment of

2

$180,000. They failed to make the other required payments, however, so the state court scheduled a foreclosure sale for early December 2014.

One day before the scheduled foreclosure sale, Benkovitch filed for Chapter 11 bankruptcy. This had the effect of preventing BANA from going forward with the foreclosure sale. BANA instead filed two proofs of claim in the bankruptcy case and moved for relief from the automatic stay.

Eventually, Benkovitch and BANA came to an agreement to settle BANA's claims relating to the Mashta property. Under this agreement, BANA agreed to accept $7.3 million in full satisfaction of its claims—$180,000 less than the agreed-upon valuation of $7.48 million—from an entity called Kessra Capital, LLC, which was owned by Kachkar's son. If Kessra Capital failed to produce the funds within a certain period, however, BANA would be granted full relief from the automatic stay to pursue its foreclosure remedies under state law. Benkovitch filed a motion in the bankruptcy court outlining the proposed settlement terms. Further, Benkovitch's confirmation plan provided that, upon its confirmation, Benkovitch would take full title to the Mashta property, free and clear of any claim by Kachkar. Kachkar was to execute any deeds necessary to effectuate the transfer of his interest in the property to her.

The bankruptcy court approved the settlement agreement and confirmed Benkovitch's Chapter 11 plan. In the order confirming the plan, the court stated that Benkovitch was "the owner in fee simple" of the Mashta property.

Thereafter, Kachkar, Benkovitch, and BANA executed the "Third Addendum to Settlement Agreement and Release" (the "Third Addendum"), which incorporated the terms of the settlement approved by the bankruptcy court. The Third Addendum also addressed the $180,000 payment that was made after the 2014 foreclosure settlement. According to the Third Addendum, the $180,000 was not an "escrow deposit," and it had been properly applied to Kachkar and Benkovitch's loan debt balance. Further, Kachkar released "any and all claims" arising out of this payment.

Despite a number of extensions, Kessra Capital failed to produce the $7.3 million. As a result, the bankruptcy court stated that it would allow a foreclosure sale to go forward on February 8, 2016. The court issued an order authorizing the sale but enjoining the state clerk from issuing a Certificate of Sale until February 12, 2016, to give Kessra Capital more time to produce the money. The sale went forward as scheduled, and Feathers Capital Group, LLC ("Feathers") purchased the property for $7,132,100. Contrary to the bankruptcy court's order, the state clerk issued a Certificate of Sale on February 9, 2016. The bankruptcy court ultimately ordered the state court to vacate the Certificate of Sale and issue a new Certificate *nunc pro tunc* to February 12, 2016.

4

Eventually, Benkovitch admitted that she had "material[ly] default[ed]" on the terms of her Chapter 11 plan and moved the bankruptcy court to convert the case to a liquidation under Chapter 7.  The bankruptcy court did so and granted Benkovitch a discharge in December 2016.

## II.

Shortly after the foreclosure sale in February 2016, Kachkar filed a complaint in state court against BANA and Feathers and other persons and entities associated with those two defendants.  (Where necessary to distinguish them, we refer to the defendants as two groups: (1) the "BANA Defendants"; and (2) the "Feathers Defendants.") Raising various contract and tort claims, the complaint alleged misconduct in relation to two basic events: (1) BANA's withholding of the $180,000 payment; and (2) the foreclosure sale of the Mashta property.  Kachkar sought damages and injunctive relief enjoining the completion of the sale of the Mashta property.

The defendants removed the action to the bankruptcy court, invoking its jurisdiction on the ground that Kachkar's claims were inextricably intertwined with Benkovitch's bankruptcy proceeding.[1]  Kachkar objected that the bankruptcy court

---

[1] Kachkar argues that the defendants' notice of removal was defective because Brian Moynihan, a defendant, did not join in it.  Even if we assume, *arguendo*, that Moynihan's absence was a procedural defect in removal, we conclude that Moynihan cured the defect by later consenting to removal.  *See In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1410 n.2 (11th Cir. 1997) (the failure to join all defendants is not a jurisdictional defect).

lacked subject-matter jurisdiction and moved for remand to the state court or, alternatively, abstention. The bankruptcy court denied those requests.

The bankruptcy court then dismissed Kachkar's action for several reasons. It first concluded that, because Kachkar had relinquished his interest in the Mashta property prior to the foreclosure sale, he lacked standing to bring his claims. It also determined that the complaint was barred by the doctrine of *res judicata*, that Kachkar had released his claims in the prior settlement agreements, and that he had otherwise failed to state cognizable claims for relief. Kachkar appealed these rulings to the district court, which, exercising *de novo* review, affirmed the bankruptcy court.[2]  Kachkar now appeals to this Court.

## III.

---

[2] Over Kachkar's objections, both the bankruptcy and district court concluded that the matter was a "core proceeding," so the bankruptcy court had the authority to issue final orders and judgments. *See Wortley v. Bakst*, 844 F.3d 1313, 1318 (11th Cir. 2017) ("Bankruptcy courts have authority to enter final orders and judgments in 'core proceedings arising under [T]itle 11, or arising in a case under [T]itle 11.'" (quoting 28 U.S.C § 157(b)(1)). Kachkar challenges these rulings, arguing that the matter was a "non-core proceeding," and that the bankruptcy court should have instead issued non-binding proposed findings of fact and conclusions of law for the district court's review and approval. *See id.* ("Bankruptcy courts may also hear non-core proceedings that are 'otherwise related to a case under [T]itle 11,' but they may not enter final orders in these related non-core cases unless all parties consent." (quoting 28 U.S.C. § 157(c)(1)). Kachkar expressly did not consent to the bankruptcy court's jurisdiction, so to the extent the proceeding was non-core, the bankruptcy court erred in entering final judgment. However, we conclude that any error was harmless because the district court affirmed the bankruptcy court after exercising *de novo* review, which is the same review the court would have applied if it had expressly treated the bankruptcy court's order as a non-final proposed ruling. *See id.* at 1321 ("[A] district court may treat an unauthorized order as a report with proposed findings of fact and/or conclusions of law under § 157(c)(1), thereby exercising *de novo* review before entering judgment."). Because the district court issued the equivalent of a final judgment in this matter, it remedied any underlying error.

6

We first consider whether the bankruptcy court had subject-matter jurisdiction over Kachkar's complaint and, even if so, whether the court was required to abstain in favor of the state court. We review issues of subject-matter jurisdiction *de novo*. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006). We likewise review *de novo* determinations of law made by either the bankruptcy or district court. *Westgate Vacation Villas, Ltd. v. Tabas (In re Int'l Pharmacy & Discount II, Inc.)*, 443 F.3d 767, 770 (11th Cir. 2005).

## A. Subject-Matter Jurisdiction

The bankruptcy removal statute states that a party may remove any claim or cause of action in a civil action to the district court for the district where such civil action is pending, "if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. §] 1334." 28 U.S.C. § 1452(a). If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, however, "the case shall be remanded." *Id.* §1447(c).

Under § 1334, district courts have "original but not exclusive jurisdiction" of three categories of civil proceedings: (1) those "arising under title 11," which is the portion of the U.S. code devoted to bankruptcy; (2) those "arising in . . . cases under title 11"; and (3) those "related to cases under title 11." *Id.* § 1334(b). A district court may refer these matters to the bankruptcy court, which exercises jurisdiction "derivate of and dependent upon" the district court's jurisdiction. *Cont'l Nat'l Bank*

*of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1344 (11th Cir. 1999); 28 U.S.C. § 157(a).  Plus, a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders."  *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009).

The parties address both "arising in" and "related to" jurisdiction.  We find it unnecessary to determine whether the bankruptcy court had "arising in" jurisdiction, because it had jurisdiction under the more relaxed "related to" provision.

For a civil proceeding to be "related to" a bankruptcy case, there must be "some nexus between the related civil proceeding and the Title 11 case."  *See Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir. 1990).  Ordinarily, the question is whether "the potential outcome of the dispute . . . would 'conceivably have an effect' on the bankruptcy estate."  *Wortley v. Bakst*, 844 F.3d 1313, 1320 (11th Cir. 2017) (quoting *Lemco Gypsum*, 910 F.2d at 788).  This is a "broad[]" jurisdictional grant that "encompasses cases that 'could conceivably have an effect on the estate being administered in bankruptcy' and includes any action 'which in any way impacts upon the handling and administration of the bankrupt estate.'"  *Id.*; *see In re Toledo*, 170 F.3d at 1344 (describing "related to" jurisdiction as "extremely broad").

We have not addressed, in a published opinion, the scope of "related to" jurisdiction in the post-confirmation context.  The Third Circuit, from which the *Lemco Gypsum* test was derived, has noted that "the scope of bankruptcy court jurisdiction diminishes with plan confirmation," though it "does not disappear

8

entirely." *J. Louis Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 164–65 (3d Cir. 2004). Consistent with our "related to" test, the Third Circuit has stated that "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166–67. "Matters that affect the interpretation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 167.

In his complaint, Kachkar alleged violations of several bankruptcy court orders, including those confirming the Chapter 11 plan and the settlement of BANA's claims, as well as those related to the sale of the Mashta property. A favorable outcome for Kachkar on his claims would thus at least conceivably call into question the resolution of certain matters in the underlying bankruptcy proceeding, including the disposition of the Mashta property and the treatment of his payment of $180,000 to BANA. Because the matters Kachkar raised in his complaint were based on and intertwined with various bankruptcy court orders, we conclude that there was enough of a nexus to the bankruptcy plan or proceeding for the bankruptcy court to exercise "related to" jurisdiction. *See id.* at 166–67; *Wortley*, 844 F.3d at 1320. Accordingly, remand was not required.

*B. Abstention*

9

Kachkar next argues that the bankruptcy court was required to abstain from hearing his complaint. Under 28 U.S.C. § 1334(c)(2), the "mandatory abstention" provision, a bankruptcy court must abstain from hearing a state-law claim if (1) the claim has no independent basis for federal jurisdiction, other than § 1334; (2) the claim is related to, but does not arise under or in, a bankruptcy case; (3) an action has been commenced in state court; and (4) that action can be timely adjudicated in that state-court proceeding. 28 U.S.C. § 1334(c)(2).

Here, the bankruptcy court correctly denied Kachkar's request for abstention. Even assuming, *arguendo*, that the matter was not a core proceeding, the bankruptcy court had a basis for jurisdiction independent from § 1334. That is, the bankruptcy court retained jurisdiction to interpret and enforce its own prior orders, and here, several bankruptcy-court orders were at the center of the dispute. Accordingly, the bankruptcy court was not required to abstain.[3]

## IV.

We next consider Kachkar's standing to pursue his claims. The bankruptcy court and district court concluded that he lacked standing to pursue claims based on the sale of the Mashta property because he had no interest in the property at the time. We review issues of standing *de novo*. *DiMaio v. Democratic Nat'l Comm.*, 520

---

[3] To the extent Kachkar argues that the bankruptcy court erred by refusing to grant permissive abstention, that decision "is not reviewable by appeal or otherwise by the court of appeals." 28 U.S.C. § 1334(d).

F.3d 1299, 1301 (11th Cir. 2008).

Standing is a threshold jurisdictional question which must be addressed prior to, and independent of, the merits of a party's claim. *Id.* In order to satisfy Article III requirements of standing, a plaintiff must show that (1) he has suffered an injury in fact which is concrete and particularized as well as actual or imminent; (2) the injury is fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable ruling. *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted).

We note, as an initial matter, that Kachkar did not appeal, to the extent he could, the order confirming Benkovitch's Chapter 11 Plan. That order, therefore, became effective and is not challengeable in this proceeding. In that order, the bankruptcy court ruled that Kachkar lacked an interest in the Mashta property as of the date of the confirmation order.

Thus, the lower courts correctly found that Kachkar lacked standing to assert any claims that were directly related to the foreclosure sale of the Mashta property or the premature issuance of the Certificate of Sale. Because Kachkar lacked an interest in the Mashta property at the time of that sale, he cannot demonstrate an

injury in fact as to those events, and he therefore lacks standing to bring any claims in connection with them. *Lujan*, 504 U.S. at 559–60. That determination covers all of the claims against the Feather Defendants, along with some of the claims against the BANA defendants, so we affirm the district court's dismissal of these claims for lack of standing.

Nevertheless, we conclude that Kachkar had standing to bring claims— including for breach of contract, unjust enrichment, breach of fiduciary duty, fraudulent inducement, and conversion—related to his payment of $180,000. He alleges that the wrongful acts of the BANA Defendants caused him to lose this money, which was part of the original April 2014 settlement agreement, for nothing in return. These claims meet the threshold requirements for Article III standing. *See Lujan*, 504 U.S. at 559–60.

## V.

Even though Kachkar can demonstrate standing for some of his claims, we affirm the district court's dismissal with prejudice of these claims because Kachkar has not stated a viable claim to relief. *See Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007) ("This court may affirm on any ground supported by the record.").

Whether a complaint states a viable claim for relief is a question of law reviewed *de novo*, accepting all factual allegations in the complaint as true and

12

viewing them in the light most favorable to the plaintiff. *Starship Enters. of Atlanta, Inc. v. Coweta Cty.*, 708 F.3d 1243, 1252 (11th Cir. 2013). To withstand dismissal, a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Here, Kachkar failed to state any viable claims for relief regarding his payment of $180,000 in connection with the April 2014 settlement agreement. First, Kachkar claimed that the BANA Defendants breached the Third Addendum, but he failed to specify how the failure to return his $180,000 payment breached that agreement, which expressly stated that the $180,000 was properly applied to his loan-debt balance. Plus, Kachkar agreed to release any and all claims arising out of that payment. And his allegations of other alleged breaches are too vague and conclusory to state a plausible claim.

Second, Kachkar's claim for unjust enrichment fails because an unjust-enrichment claim cannot lie where an express contract exists. *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008). Nor are the alleged circumstances here such that it would be inequitable for the defendant to

13

retain the benefit without paying the value thereof to the plaintiff. *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999).

Third, Kachkar's claim for conversion likewise fails because he did not allege any tortious conduct leading to the erroneous withholding of funds independent from an alleged breach of the Third Addendum. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (successful conversion allegations must be independent from a failure to comply with a contract).

Fourth, Kachkar has not stated a plausible claim for fraudulent inducement because he failed to identify any "false statement concerning a material fact." *Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. Dist. Ct. App. 2016). Kackhar's allegations amount to little more than conclusory allegations of wrongdoing, which are not sufficient to state a claim. Plus, Kachkar executed an agreement with specific terms regarding the $180,000 payment, so, to the extent the agreement differed from what Kachkar was told before entering into the contract, he likely cannot establish reasonable reliance on any representations not contained within the agreement. *See id.* (noting that such assurances are better enforced through contract principles).

Fifth, any claim for breach of fiduciary duty fails because Kachkar's allegations do not plausibly establish a fiduciary relationship between himself and BANA or any other defendant. *See McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217,

14

1226 n.13 (11th Cir. 2002) ("As a general matter, there is no presumed fiduciary relationship between a lender and a borrower under the common law.").

Sixth, Kackhar's claim against BANA under the Florida Deceptive and Unfair Trade Practices Act fails because that Act does not apply to "[b]anks, credit unions, and savings and loan associations regulated by federal agencies." Fla. Stat. § 501.212(4)(c). Because BANA is a federally regulated bank, the Act does not apply to it.

Seventh, Kachkar's remaining claims—for aiding and abetting, conspiracy, and breach of an implied covenant of good faith and fair dealing—are derivative of his other claims and cannot stand on their own. And to the extent we have not expressly addressed any remaining claims or arguments, we have considered them and find them to be without merit.

Finally, the lower courts did not err in refusing to allow Kachkar to amend his complaint. While a *pro se* plaintiff ordinarily must be given at least once chance to amend his or her complaint, *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) (holding that this rule does not apply to counseled litigants who never requested leave to amend), the district court need not grant leave to amend where amendment would be futile, *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).

15

We conclude that granting leave to amend would be futile. As explained above, Kachkar lacks an interest in the Mastha property and therefore lacks standing to bring claims based on the foreclosure sale of that property. With regard to his remaining claims, his allegations offer no indication that he could state a plausible claim to relief given the deficiencies we have identified above and the additional obstacles covered in the bankruptcy court's order relating to the BANA Defendants.

## VI.

In sum, neither the bankruptcy court nor the district court committed reversible error in these proceedings. Accordingly, we affirm.

**AFFIRMED.**