[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10085
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-22576-MGC

THE AFFILIATI NETWORK, INC.,
SANJAY PALTA,

                              Plaintiffs - Counter Defendants - Appellees,

versus

JOSEPH WANAMAKER,
FITCREWUSA INC.,

                              Defendants - Counter Claimants - Appellants,

WELLS FARGO BANK, N.A.,

                              Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 16, 2021)

Before JORDAN, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

The Affiliati Network, Inc. and Sanjay Palta filed suit against FitCrewUSA Inc. and Joseph Wanamaker (collectively, FitCrew) for breach of a settlement agreement resolving a prior action for unpaid commissions.  FitCrew now appeals the district court's orders dismissing its counterclaims for fraud and granting summary judgment in favor of Affiliati and Palta on their claim for breach of the settlement agreement.  The central issue on appeal is whether the district court erred in applying the rule from *Mergens v. Dreyfoos*, 166 F.3d 1114 (11th Cir. 1999), in which we held a party that has agreed to resolve a controversy involving fraud cannot later maintain a fraud claim concerning the agreement against the opposing party.  FitCrew argues *Mergens* is distinguishable and that it is no longer good law.[1]  After review,[2] we affirm the district court.

---

[1]  Affiliati has moved to strike FitCrew's argument, made for the first time in its reply brief, that *Mergens* is no longer good law.  Ordinarily, we do not consider an argument raised for the first time in a reply brief.  *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004).  However, in this diversity action concerning Florida state-law claims, we are required to apply the law as declared by the Florida Supreme Court.  *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 790 (11th Cir. 1999).  And while we are generally bound by prior panel precedent unless this Court en banc or the United States Supreme Court overrules a prior decision, we are "free to reinterpret state law" where a subsequent Florida Supreme Court decision casts doubt on our prior interpretation of state law.  *Hattaway v. McMillian*, 903 F.2d 1440, 1445 n.5 (11th Cir. 1990).  As FitCrew's new argument presents a pure question of law and our refusal to consider it could result in failing to apply the law as declared by the Florida Supreme Court, Affiliati's "Motion to Strike New Arguments Presented in Appellants' Reply Brief" is DENIED.

[2] We review both the dismissal of a counterclaim and the grant of summary judgment de novo.  *See First Union Disc. Brokerage Servs., Inc. v. Milos*, 997 F.2d 835, 841 (11th Cir. 1993).

## I. BACKGROUND

### A. *The Prior Litigation and Settlement Agreement*

Affiliati is an online marketing company that provides clients with a network of third-party affiliates that promote products and drive sales through online content. In 2016, FitCrew, a fitness supplement company, entered into a marketing agreement with Affiliati, in which FitCrew agreed to pay Affiliati commissions on sales resulting from Affiliati's marketing efforts. Later that year, however, Affiliati filed suit for breach of contract, alleging FitCrew had failed to pay approximately $1.4 million in commissions owed pursuant to the parties' agreement. *See The Affiliati Network, Inc. v. Wanamaker, et al.*, No. 1:16-cv-24097-UU (S.D. Fla.) (the Prior Litigation).

FitCrew alleged Affiliati and its president—Palta—had engaged in fraudulent advertising practices by falsely claiming professional athletes had endorsed FitCrew's supplements, using intellectual property owned by ESPN and the NFL without authorization, and removing or hiding relevant terms and conditions, all resulting in "massive customer dissatisfaction" and over $1 million in chargebacks. These allegations formed the basis for FitCrew's fraud-based affirmative defense, counterclaims against Affiliati for fraudulent misrepresentation, civil conspiracy to defraud, breach of oral contract, and

fraudulent inducement, as well as third-party claims against Palta individually for fraudulent misrepresentation and civil conspiracy to defraud.

Ultimately, the parties entered into a settlement agreement (the Settlement Agreement or the Agreement) under which FitCrew agreed to pay Affiliati and Palta (collectively, Affiliati) just over $1 million over a six-year period. The Agreement contained a non-disparagement provision, confidentiality provision, and a provision that the parties' stipulated confidentiality order would continue to govern their conduct. Pursuant to these clauses, the parties agreed not to make any disparaging or negative remarks that would impugn or damage one another's character, reputation, or business acumen, and to keep confidential details of their Agreement and the underlying conduct. However, the clauses contained exceptions for certain truthful statements, with the non-disparagement provision broadly excluding any truthful statement made "in connection with any legal proceeding or investigation by either Party or any governmental authority." The Agreement also provided that in the event of a default by FitCrew on any term of the Agreement—including a failure to meet its payment obligations or comply with the confidentiality and non-disparagement provisions—Affiliati would be "entitled to accelerate the entire sum due . . . and submit an ex-parte final consent judgment against [FitCrew] . . . for the total principal sum of $1,400,766.00" plus attorney's fees, costs, and prejudgment interest.

B. *The Instant Lawsuit for Breach of the Settlement Agreement*

Shortly after entering into the Settlement Agreement, FitCrew learned the primary affiliate assigned to the FitCrew marketing campaign had been arrested for conspiracy to commit advertising fraud and money laundering. FitCrew began communicating with prosecutors in the affiliate's criminal case, who asked FitCrew to provide the name of other Affiliati clients that may have been subjected to similar false advertising practices. FitCrew cooperated and later asked other former Affiliati clients to sign complaint forms to be filed with the Florida Attorney General.

In June 2018, Affiliati filed the instant lawsuit against FitCrew for breach of the Settlement Agreement's confidentiality and non-disparagement provisions based, in part, on FitCrew's communications with current and former Affiliati clients. During the litigation, FitCrew missed its October 2018 installment payment, prompting Affiliati to amend its complaint to include failure to pay as an additional ground for breach. In Count I, for breach of the Settlement Agreement, Affiliati sought accelerated payment of $1.4 million, and in Count II, for injunctive relief, it sought to enjoin FitCrew from further breaches of the confidentiality and non-disparagement provisions.

In its affirmative defenses and counterclaims against Affiliati, FitCrew again claimed fraud. This time, FitCrew asserted Affiliati had made misrepresentations

5

during discovery in the Prior Litigation to conceal its knowledge of the fraudulent ad content and induce FitCrew to settle. Specifically, through a privilege log, discovery responses, meet and confer letters, and deposition testimony, Affiliati misrepresented that it had no access to affiliate ad content and had redacted only the names of affiliates from its discovery production. However, FitCrew later discovered that a redacted tracking report produced by Affiliati contained links to affiliate websites displaying fraudulent and deceptive advertisements. Based on this conduct, FitCrew counterclaimed to have the Settlement Agreement declared void and unenforceable, for fraudulent inducement, and for fraudulent misrepresentation.

Affiliati moved to dismiss the counterclaims, and the district court granted its motion. The court concluded that under *Mergens*, FitCrew could not show reasonable reliance on Affiliati's statements during the Prior Litigation—and therefore could not prevail on its fraud-based counterclaims—because FitCrew had accused Affiliati of fraud and dishonesty in that action.

Affiliati then moved for partial summary judgment as to Count I and FitCrew moved for summary judgment on both counts. The district court granted Affiliati's motion. The court found FitCrew had breached the Settlement Agreement based on its failure to make a required payment and rejected all of FitCrew's fraud-based affirmative defenses under *Mergens*, for the same reasons it

6

had dismissed FitCrew's counterclaims.  The court further concluded Affiliati was entitled to entry of a judgment of $1.4 million pursuant to the Settlement Agreement's default clause.  However, the court deferred ruling on Count II and on FitCrew's third and fifth affirmative defenses, which concerned the breach of the Agreement's confidentiality and non-disparagement provisions.

Pursuant to a joint stipulation in which Affiliati agreed to withdraw Count II without prejudice and the parties agreed to an award of attorney's fees and costs, the district court entered a "consent final judgment" in favor of Affiliati.  This appeal followed.

## II.  DISCUSSION

In dismissing FitCrew's counterclaims and concluding FitCrew's fraud-based affirmative defenses did not shield it from liability for nonpayment under the Agreement, the district court relied on our decision in *Mergens*, where we held "a settlement fraud claimant cannot prove reasonable reliance on a party's misrepresentations if he settles a dispute involving accusations that the other party was guilty of fraud or other dishonest conduct."  *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003) (citing *Mergens*, 166 F.3d at 1118).  In *Mergens*, a corporation's minority shareholders entered into a stock repurchase agreement with majority shareholder Dreyfoos after accusing Dreyfoos of  "a shocking waste of corporate assets" and threatening

7

litigation if Dreyfoos did not buy back their shares. *Mergens*, 166 F.3d at 1116, 1118. After executing the agreement, plaintiffs brought an action for securities fraud, fraudulent inducement, and breach of fiduciary duty, alleging Dreyfoos had misrepresented the corporation's cash flow and assets to induce them to sell at a price below market value. *Id.* at 1116. We affirmed the district court's grant of judgment on the pleadings in favor of Dreyfoos on the fraud claims, concluding plaintiffs were not justified in relying on Dreyfoos's representations, given: (1) they were sophisticated sellers who were represented by counsel, (2) they were in an untrusting and adversarial relationship with Dreyfoos, and (3) they had agreed to settle a threatened lawsuit involving claims of fraud. *Id.* at 1118.

These same considerations were relevant in *Green Leaf*. There, plaintiff plant growers settled state-law claims for fraud and products liability relating to the use of a DuPont fungicide, despite their knowledge of discovery abuses in their own case and numerous others throughout the country involving the fungicide. *Green Leaf*, 341 F.3d at 1296. Later, plaintiffs brought claims for fraud, alleging DuPont had engaged in "a massive scheme of perjury, falsification of evidence, and fraudulent concealment of evidence" to induce plaintiffs to settle for less than the value of their case. *Id.* We affirmed the district court's dismissal of plaintiffs' fraud claims, concluding plaintiffs could not "reasonably or justifiably rely on any of DuPont's misrepresentations" where they "were represented by counsel, were in

8

an antagonistic and distrusting relationship with DuPont, and settled litigation that included accusations of fraud and other dishonest conduct by DuPont." *Id.* at 1305.

FitCrew argues that *Mergens* and *Green Leaf* are distinguishable because the fraud claims in this case are based on different conduct than those alleged against Affiliati in the Prior Litigation—namely, they are based on misrepresentations made by Affiliati's *attorney* during discovery. FitCrew argues attorneys must be able to rely on representations made by opposing counsel, especially when, as here, the representations concern discoverable material within the opposing party's exclusive control.

The district court did not err in applying the *Mergens* rule even though FitCrew's fraud claims were based on misconduct that occurred during discovery through Affiliati's attorneys. In *Green Leaf*, we observed plaintiffs' past and current claims involved "the same type of fraudulent conduct" by DuPont—the concealment of information concerning the fungicide's defects. *Green Leaf*, 341 F.3d at 1304. In the prior action, those defects were concealed from the public and the Environmental Protection Agency, while in the latter action, they were hidden from the court and opposing counsel. *Id.* Nevertheless, we rejected plaintiffs' argument that their reliance was reasonable because the latter misrepresentations were made during litigation. *Id.* at 1304-05 ("To argue in the abstract that litigants

9

should be able to rely on an opponent to tell the truth in discovery responses is not enough to make reliance upon an opponent's representations reasonable in a separate fraud claim for damages."). While sanctions or bar admonitions might be available as remedies for the discovery abuses, a separate claim of fraud could not be sustained under the circumstances. *Id.* at 1305.

Despite our observation in *Green Leaf* that plaintiffs' prior and current fraud claims involved the same type of conduct, neither *Green Leaf* nor *Mergens* require an exact parallel between the fraud claims resolved by a settlement agreement and those alleged to have induced the settlement. Rather, what was central to our analysis in both cases was that the plaintiffs were represented by counsel, "in an antagonistic and distrusting relationship" with the defendants, and had settled litigation, or threatened litigation, "that included accusations of fraud and other dishonest conduct." *See Green Leaf*, 341 F.3d at 1305; *Mergens*, 166 F.3d at 1118. The same circumstances are present in this action, and the fact the underlying misrepresentations were made in the course of discovery does not render FitCrew's reliance reasonable.

FitCrew argues that *Mergens* is no longer good law in light of *Butler v. Yusem*, a 2010 case in which the Florida Supreme Court held that "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation." 44 So. 3d 102, 105 (Fla. 2010). In *Butler*, the plaintiff brought claims for fraudulent and

10

negligent misrepresentation against several real estate developers after previously attempting to verify their reputation in construction and commercial development, which the trial court dismissed based on lack of due diligence. *Butler*, 44 So. 3d at 103-04. Following remand from the Florida Supreme Court, Florida's Fourth District Court of Appeal affirmed the dismissal of Butler's fraud claims, concluding the trial court's finding regarding the lack of due diligence translated into a lack of justifiable reliance. *Id.* at 104-05. The Florida Supreme Court quashed the Fourth District Court of Appeal's decision, holding justifiable reliance was not an element of fraudulent misrepresentation. *Id.* at 105.

In holding a settlement fraud claimant could not reasonably rely on misrepresentations made by the allegedly dishonest party with whom it settled, both *Mergens* and *Green Leaf* cited Florida case law indicating that justifiable reliance is an element of fraudulent misrepresentation. *Green Leaf*, 341 F.3d at 1304 n.11; *Mergens*, 166 F.3d at 1117. The rule from *Mergens* derived from *Pettinelli v. Danzig*, 722 F.2d 706, 709 (11th Cir. 1984), which held that a "right to rely" is another element of common law fraud under *Columbus Hotel Corp. v. Hotel Mgmt. Co.*, 156 So. 893, 901 (Fla. 1934). Regardless of whether reliance is justifiable or reasonable, Florida courts have long held that "[t]o be remediable, a representation must have been of such a nature and made under such circumstances that the injured party *had a right to rely upon it*." *Columbus Hotel*, 156 So. at 901.

11

Even after *Butler*, Florida intermediate courts have continued to hold that "following accusations of fraud, the accuser may not then 'justifiably rely' on the representations of the accused in subsequent negotiations aimed at resolving the dispute." *Diaz v. Kosch*, 250 So. 3d 156, 167 (Fla. 3d DCA 2018). We, like Florida's Third District Court of Appeal, "do not read *Butler* as receding from the well-established and common sense principle of law espoused in *Columbus Hotel* and its progeny: generally, adverse parties negotiating a settlement agreement in an attempt to avoid litigation cannot rely upon the representations of one another." *Moriber v. Dreiling*, 194 So. 3d 369, 374 (Fla. 3d DCA 2016). We reject FitCrew's argument that *Mergens* is no longer good law.

FitCrew argues that when a party fails to turn over information in discovery that the opposing party cannot otherwise obtain, a settlement should be disallowed. Under Florida law, a court may discourage discovery misconduct "by disallowing the settlement which is the fruit of such misconduct." *See Garvin v. Tidwell*, 126 So. 3d 1224, 1230 (Fla. 4th DCA 2012) (reversing denial of motion to rescind settlement agreement). However, although discovery misconduct may support a claim of recission under certain circumstances, it does not allow a party to assert independent settlement fraud claims against a dishonest party with whom it has settled prior claims for fraud. *See Green Leaf*, 341 F.3d at 1305.

12

FitCrew also argues that because it had sufficiently alleged reasonable reliance, a motion to dismiss or motion for summary judgment is "not the appropriate vehicle" for disputing this factual issue. We disagree. Whether FitCrew had a right to rely on Affiliati's discovery responses in the Prior Litigation, where it had accused Affiliati of fraud—is a question of law. *Green Leaf*, 341 F.3d at 1305 n.12. The district court did not err in dismissing FitCrew's counterclaims, or in granting Affiliati's motion for summary judgment, in concluding that FitCrew had no such right to rely under the circumstances.

## III.  CONCLUSION

For the reasons above, the district court did not err in dismissing FitCrew's counterclaims and granting summary judgment in favor of Affiliati on Count I of the amended complaint. Accordingly, we affirm.

**AFFIRMED.**